859 A.2d 659

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Shuan ROSE.

Misc. Docket AG No. 39, Sept. Term, 2003.

Court of Appeals of Maryland.

Oct. 14, 2004.

Melvin Hirshman, Bar Counsel and Dolores O. Ridgell, Assistant Bar Counsel for the Attorney Grievance Commission of Maryland for petitioner.

No arguments on behalf of the respondent.

Argued Before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, and GREENE JJ.

BELL, Chief Judge.

The Attorney Grievance Commission of Maryland, the petitioner, acting pursuant to Maryland Rule 16–751,[1] approved the filing by Bar Counsel of a Petition For Disciplinary or Remedial Action against Shuan Rose, the respondent. In the petition, Bar Counsel charged that the respondent engaged in misconduct, as defined by Maryland Rules 16–701(i),[2] and 16–812, and consisting of violations of various of the Maryland Rules of Professional Conduct, as adopted by the latter Maryland Rule. Specifically, he alleged that the respondent violated

---

**1.** Maryland Rule 16–751 provides:
   "(a) Commencement of Disciplinary or Remedial Action.—Upon approval of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

**2.** Pursuant to Maryland Rule 16–701(i) ' "Professional misconduct' or 'misconduct' has the meaning set forth in Rule 8.4 of the Maryland Rules of Professional Conduct, as adopted by Rule 16–812. The term includes the knowing failure to respond to a request for information authorized by this Chapter without asserting, in writing, a privilege or other basis for such failure."

Rules 1.15, Safekeeping Property,[3] 5.4, Professional Independence of a Lawyer,[4] 5.5, Unauthorized Practice of Law,[5] 8.1,

---

**3.** Rule 1.15 provides:

"(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

"(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

"(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved."

**4.** Rule 5.4 provides:

"(a) A lawyer or law firm shall not share legal fees with a nonlawyer, except that:

"(1) an agreement by a lawyer with the lawyer's firm, partner, or associate may provide for the payment of money, over a reasonable period of time after the lawyer's death, to the lawyer's estate or to one or more specified persons;

"(2) a lawyer who purchases the practice of a lawyer who is deceased or disabled or who has disappeared may pursuant to the provisions of Rule 1.17, pay the purchase price to the estate or representative of the lawyer.

"(3) a lawyer who undertakes to complete unfinished legal business of a deceased lawyer may pay to the estate of the deceased lawyer that proportion of the total compensation which fairly represents the services rendered by the deceased lawyer; and

"(4) a lawyer or law firm may include nonlawyer employees in a compensation or retirement plan, even though the plan is based in whole or in part on a profit-sharing arrangement.

"(b) A lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law."

**5.** Rule 5.5 provides:

"A lawyer shall not:

Bar Admission and Disciplinary Matters,[6] and 8.4, Misconduct.[7]

We referred the case to the Honorable Evelyn Omega Cannon, of the Circuit Court for Baltimore City, for hearing pursuant to Rules 16–752(a) [8] and 16–757(c).[9] Despite being served, the respondent did not respond to the petition or file an answer to the petitioner's request for discovery. Conse-

---

"(b) assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law."

6. Rule 8.1 provides:
"An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
"(a) knowingly make a false statement of material fact; or
"(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

7. Rule 8.4, as relevant, provides:
"It is professional misconduct for a lawyer to:
"(a) violate or attempt to violate the Rules of Professional conduct, knowingly assist or induce another to do so, or do so through the acts of another;
\* \* \* \*
"(d) engage in conduct that is prejudicial to the administration of justice."

8. Rule 16–752(a) provides:
"(a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

9. Maryland Rule 16–757(c) provides:
"(c) Findings and conclusions. The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party."

quently, an Order of Default was entered and served on him. Nevertheless, the respondent did not move to vacate the order and, although he appeared at the hearing, he arrived late and offered no evidence. Following the hearing, the hearing court made findings of fact, by clear and convincing evidence, and drew conclusions of law, as follows.

"The Respondent was admitted to practice law in the State of Maryland on March 4, 1985. The Respondent is not admitted to practice law in any other jurisdiction. During times relevant to the Petition for Disciplinary or Remedial Action, Respondent maintained a law office in Baltimore City, Maryland.

"Bar Counsel sent a letter to Respondent dated February 20, 2002 asking Respondent to explain an overdraft on his trust account and requested that Respondent provide financial records relating to his attorney trust account. Bar Counsel asked that Respondent send a written response within ten (10) days of the receipt of the letter. On February 21, 2002, Respondent received the letter and on or about that date, telephoned Bar Counsel's office, and spoke with Bar Counsel's Assistant. Respondent represented that he would send a written response to the letter. He did not. On or about April 25, 2002, Bar Counsel's Assistant contacted Respondent by telephone and reminded the Respondent of Bar Counsel's request. During the telephone call of April 25, 2002, Respondent once again represented that he would send a written response. He did not.

"On or about May 14, 2002, an Assistant Bar Counsel sent Respondent a letter requesting that he provide the financial records relating to the attorney trust account and a written response explaining the overdraft. On or about May 28, 2002, Attorney Grievance Commission Investigator, Dennis Biennas, served the Respondent with a copy of a subpoena to the Bank of America for records on Respondent's attorney trust account. That same day, Respondent gave Biennas a letter addressed to Assistant Bar Counsel dated May 28, 2002. In this letter, Respondent states, 'I was contacted by Mary

Harris, of the Paralegal Network, a company that performs paralegal services' and she 'told me that she had a client that needed legal representation that she could not provide.' The letter explained that Respondent served as the attorney for the client, James King, and that Ms. Harris performed paralegal services as an independent contractor with his law firm. Describing the fee arrangement, the letter stated that '[Mr. King] agreed to pay $2500 dollars by February 13, 2002' and that upon receipt of the check, 'Ms. Harris asked for an advance of $1250 dollars on the check for work that she had done as well as for ongoing efforts on the case.'

Also, the letter noted that Harris 'had done the bulk of the consultations with the client and the document preparation.' "

In an apparent effort to address the overdraft on his Attorney Trust Account, Respondent explained, "I had intended to deposit the check in the bank the following day, but unfortunately did not get to the bank until two days later. Ms. Harris [in the] meantime had deposited the check in her account without checking with me first to see whether I had deposited Mr. King's check ... Mr. King has passed two bad checks."

"The bank records obtained by Bar Counsel show that, on February 12, 2002, Respondent wrote check number 1027 payable to Mary Harris in the amount of $1,250.00. Check number 1027 was posted to the account on February 12, 2002. As of February 12, 2002, the balance in the attorney trust account was less than $10.00. This Court finds that on February 12, 2002, when Respondent wrote the check, he knew that he did not have $1,250.00 in his attorney trust account.

"The bank records also indicated that, on February 14, 2002, Respondent deposited two checks from James King to his attorney trust account. The deposit slip for these two checks does not include the designation 'attorney trust account,' 'attorney escrow account,' or 'clients' funds account' On or about February 14, 2002, Respondent wrote check number 1028 payable to Paralegal Network in the amount of $1,250.00.

Check number 1028 cleared the attorney trust account on February 15, 2002. On or about March 7, 2002, Respondent wrote check 1029 payable to the Paralegal Network, Inc., in the amount of $1,435.00.

"Checks 1027, 1028, and 1029 are each designated 'IOLTA,' but do not include the designation 'attorney trust account,' 'attorney escrow account,' or 'clients' funds account.'

"Harris is not a member of the Maryland Bar or the bar of any other state or the District of Columbia. Respondent was aware of this fact on February 1, 2002."

The hearing court concluded that the respondent violated Rules 1.15(a), 8.1((b) and 8.4(d) [10] of the Rules of Professional Responsibility. It rejected the charges and petitioner's argument with regard to Rules 5.4 and 5.5.

With respect to the Rule 1.15 violation, the hearing judge determined that the respondent did not maintain his attorney trust account in accordance with Maryland Rule 16–606. Pointing to that rule's requirement that an attorney or law firm "maintain each attorney trust account with a title that includes the name of the attorney or law firm and that clearly designates the account as 'Attorney Trust Account,' 'Attorney Escrow Account,' or 'Clients' Funds Account' on all checks and deposit slips," the court concluded:

"Here, although the bank account statements appear to be titled properly, checks 1027, 1028, and 1029, and the deposit slip for the checks from James King do not include the designation 'attorney trust account,' 'attorney escrow account,' or 'clients' funds account' as required under Rule 16–606."

---

**10.** To be sure, the hearing court's opinion refers to Rule 8.4(b). That Rule prohibits the commission of "a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." The court's discussion of the violation, referring to the charge as being "engaging 'in conduct that is prejudicial to the administration of justice,' and stating its conclusion in that form, makes clear that it is 8.4(d) that was the violation found.

For its finding of a violation of Rule 8.1(b), the hearing court relied on the facts that the respondent did not respond in writing pursuant to the petitioner's letters of February 20 and May 14, 2002, and he did not timely supply the documents those letters requested. It also noted that when the respondent did send a response, it was only a partial one; it was untimely, being approximately three months after the initial request, and it did not provide the requested records. This incomplete and tardy response to the petitioner's requests for information provided the basis for the hearing court's conclusion with respect to the 8.4(d) violation: "the Court concludes that Respondent's failure to promptly and sufficiently respond to Bar Counsel's requests for information is 'conduct prejudicial to the administration of justice."

The petitioner has taken no exceptions to the hearing court's findings of fact or conclusions of law of. It has, however, filed *Petitioner's Recommendation for Sanctions,* in which it recommends the respondent be suspended from the practice of law for six months. Referring to the respondent's failure to respond to the petition and to the fact that there is no mitigating evidence in the record, the petitioner relies on *Attorney Grievance Commission v. Harrington,* 367 Md. 36, 50, 785 A.2d 1260, 1268 (2001).

Like the petitioner, the respondent has not taken exceptions. He did appear at oral argument. He informed the Court that he was, and had been, suffering from depression and that he was not then practicing law; he was living with his brother. The respondent requested a postponement of the hearing, which the Court denied. The respondent acknowledged that he had not provided the petitioner with the records it had requested.

We adopt the recommendation of the petitioner and order the respondent indefinitely suspended from the practice of law, with the right to apply for reinstatement after six months. In so doing, we are mindful that there is no allegation of dishonesty or misappropriation. On the other hand, as the petitioner points out, there are, in this record, no mitigating

factors. A word of caution is in order. The respondent is reminded that, having introduced the subject of depression, admitting to suffering from it, any petition for reinstatement will have to address the respondent's then present mental condition, as well as his overall fitness to resume the practice of law.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSU- ANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTOR- NEY GRIEVANCE COMMISSION AGAINST SHUAN ROSE.