892 A.2d 469

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Shuan H.M. ROSE.**

**Misc. Docket AG No. 62, Sept. Term, 2004.**

Court of Appeals of Maryland.

Feb. 8, 2006.

Dolores O. Ridgell, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Atty Grievance Com'n), for petitioner.

Shuan H.M. Rose, Washington, DC, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BELL, C.J.

The Attorney Grievance Commission of Maryland, the petitioner, acting pursuant to Maryland Rule 16–751,[1] approved the filing by Bar Counsel of a Petition For Disciplinary or Remedial Action against Shuan H.M. Rose, the respondent. In the petition, Bar Counsel charged that the respondent engaged in misconduct, as defined by Maryland Rules 16–701(i),[2] and 16–812, and consisting of violations of various of the Maryland Rules of Professional Conduct, as adopted by the latter Maryland Rule, violations of other Maryland rules, and a violation of a Maryland statute. Specifically, he alleged that the respondent violated Rules of Professional Conduct 1.1, Competence,[3] 1.2, Scope of Representation,[4] 1.3, Dili-

---

1. Maryland Rule 16–751 provides, as relevant:

    "(a) Commencement of Disciplinary or Remedial Action.
    "(1) *Upon Approval of Commission.* Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

2. Pursuant to Maryland Rule 16–701(i) " 'Professional misconduct' or 'misconduct' has the meaning set forth in Rule 8.4 of the Maryland Rules of Professional Conduct, as adopted by Rule 16–812. The term includes the knowing failure to respond to a request for information authorized by this Chapter without asserting, in writing, a privilege or other basis for such failure."

3. Rule 1.1 provides:

    "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

4. Rule 1.2, as in effect when the alleged misconduct occurred, provided:

    "(a) A lawyer shall abide by a client's decisions concerning the objectives of the representation, subject to paragraphs (c), (d) and (e) and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.
    "(b) A lawyer's representation of a client, including representation by appointment, does not constitute an endorsement of the client's political, economic, social or moral views or activities.

gence,[5] 1.4, Communication,[6] 1.15, Safekeeping Property,[7] 1.16,

> "(c) A lawyer may limit the objectives of the representation if the client consents after consultation.
>
> "(d) A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.
>
> "(e) When a lawyer knows that a client expects assistance not permitted by the rules of professional conduct or other law, the lawyer shall consult with the client regarding the relevant limitations on the lawyer's conduct."

By Rules Order dated February 8, 2005, effective July 1, 2005, this Rule was amended to comply substantially with the Ethics 2000 Amendments to the ABA Model Rules of Professional Conduct. Those amendments deleted paragraph (e) and made wording changes in paragraphs (a) and (c).

5. Rule 1.3 requires "[a] lawyer [to] act with reasonable diligence and promptness in representing a client."

6. Rule 1.4, in effect when the alleged misconduct occurred, provided:

> "(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
>
> "(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

By Rules Order dated February 8, 2005, effective July 1, 2005, this Rule was amended and now has a different format and wording changes.

7. Rule 1.15 provides:

> "(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
>
> "(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

Declining or Terminating Representation,[8] 3.2, Expediting Litigation,[9] 8.1, Bar Admission and Disciplinary Matters,[10] and 8.4, Misconduct,[11] Rules 16–604, Trust Account—Required De-

> "(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved."

8. Rule 1.16, as relevant,

> "(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
> "(1) the representation will result in violation of the Maryland Lawyers' Rules of Professional Conduct or other law;
> "(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or
> "(3) the lawyer is discharged.
>
> \*        \*        \*        \*        \*        \*
>
> "(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law."

9. Rule 3.2 requires "[a] lawyer [to] make reasonable efforts to expedite litigation consistent with the interests of the client."

10. Rule 8.1 provides:

> "An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
> "(a) knowingly make a false statement of material fact; or
> "(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

11. Rule 8.4, as relevant, provides:

> "It is professional misconduct for a lawyer to:
>
> \*        \*        \*        \*        \*        \*
>
> "(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

posits,[12] 16–607, Commingling of Funds,[13] 16–609, Prohibited Transactions,[14] and Maryland Code (1957, 2004 Repl.Vol.)

"(d) engage in conduct that is prejudicial to the administration of justice;"

12. Maryland Rule 16–604 provides:

"Except as otherwise permitted by rule or other law, all funds, including cash, received and accepted by an attorney or law firm in this State from a client or third person to be delivered in whole or in part to a client or third person, unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in an attorney trust account in an approved financial institution. This Rule does not apply to an instrument received by an attorney or law firm that is made payable solely to a client or third person and is transmitted directly to the client or third person."

13. Maryland Rule 16–607 provides:

"a. General Prohibition. An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16–604 or permitted to be so deposited by section b. of this Rule.

"b. Exceptions.

"1. An attorney or law firm shall either (A) deposit into an attorney trust account funds to pay any fees, service charges, or minimum balance required by the financial institution to open or maintain the account, including those fees that cannot be charged against interest due to the Maryland Legal Services Corporation Fund pursuant to Rule 16–610 b 1(D), or (B) enter into an agreement with the financial institution to have any fees or charges deducted from an operating account maintained by the attorney or law firm. The attorney or law firm may deposit into an attorney trust account any funds expected to be advanced on behalf of a client and expected to be reimbursed to the attorney by the client.

"2. An attorney or law firm may deposit into an attorney trust account funds belonging in part to a client and in part presently or potentially to the attorney or law firm. The portion belonging to the attorney or law firm shall be withdrawn promptly when the attorney or law firm becomes entitled to the funds, but any portion disputed by the client shall remain in the account until the dispute is resolved.

"3. Funds of a client or beneficial owner may be pooled and commingled in an attorney trust account with the funds held for other clients or beneficial owners."

14. Maryland Rule 16–609 provides:

"An attorney or law firm may not borrow or pledge any funds required by these Rules to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized

§ 10–306 of the Business Occupations and Professions Article, Misuse of trust money.[15]

We referred the case to the Honorable Evelyn Omega Cannon, of the Circuit Court for Baltimore City, for hearing pursuant to Rules 16–752(a) [16] and 16–757(c).[17] Following a hearing at which the respondent participated and presented mitigating evidence,[18] the hearing court made findings of fact, by clear and convincing evidence, as follows:

"There is clear and convincing evidence to support the following findings of fact:

---

purpose. An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer."

15. A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer.

16. Rule 16–752(a) provides:
"(a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

17. Maryland Rule 16–757(c) provides:
"(c) Findings and conclusions. The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party."

18. Although served with the Petition for Disciplinary or Remedial Action and with Interrogatories and requests for admissions of fact and production of documents, the respondent failed to respond. Consequently, an Order of Default was entered against him. The respondent's Motion to Vacate Default, with which he also filed an Answer, was initially denied, but later that ruling was reconsidered and the Order of Default was vacated "to allow Respondent to provide evidence in mitigation of the allegations."

"Respondent was admitted to the Bar of the Court of Appeals of Maryland on March 4, 1985. On October 14, 2004, this Court indefinitely suspended Respondent from the practice of law with the right to apply for reinstatement after six months. During times relevant to the Petition for Disciplinary or Remedial Action, Respondent maintained an office for the practice of law in Baltimore City, Maryland.

"On or about June 16, 2003, Respondent was engaged by William Horne, (hereafter 'Horne' or 'Complainant') to represent him in a divorce action. At the time of the engagement, Respondent informed Horne that he would represent him in an uncontested divorce for a flat fee of $500. On or about June 16, 2003, Horne paid Respondent $500. It was agreed that Respondent would immediately file a Complaint for Divorce for the Complainant. Respondent did not deposit any portion of the prepaid fee received from Horne to an attorney/escrow account. Respondent failed to maintain the unearned portion of the fee paid by Horne in trust until earned.

"About three weeks after Respondent was engaged, Horne contacted Respondent by telephone to determine the status of his case. Respondent informed Horne that he had not yet filed the Complaint of Divorce and that Horne would have to pay an additional $100 for the filing fee. Thereafter, Horne paid Respondent $100. Respondent did not deposit these funds to an attorney/escrow account.

"On July 29, 2003, Respondent filed the Complaint for Absolute Divorce in the Circuit Court for Baltimore City. The court issued a Writ of Summons to Horne's spouse. Respondent, however, did not inform Horne that the complaint had been filed. Thereafter, between July 30, 2003 and December 2, 2003, Respondent took no action to further the Complainant's divorce action and did not obtain service on the defendant in the action.

"During the representation, Respondent moved his office and failed to notify Horne of his current address or telephone number. Approximately three weeks after Horne paid Respondent the $100 filing fee, he called Respondent's telephone

and left messages on the answering machine. The messages were not returned. In September, 2003, Horne went to Respondent's office in an attempt to locate him. Horne found the door unlocked. He went in and waited alone for about 15 minutes. He left without seeing Respondent. In October, 2003, Horne called '411' in an effort to locate Respondent. Horne obtained a new address for Respondent's office. Horne went to this address and a receptionist for another business at that location gave Horne Respondent's cell phone number.

"Respondent also failed to notify the Circuit Court for Baltimore City of the change of address. The address contained on the docket entries is North Charles Street. The Motion for Default Judgment and Order of Default and Request to Reissue Summons bear a Greenmount Avenue address.

"On or about December 3, 2003, Respondent contacted Horne by telephone and informed Horne that the complaint for divorce had been filed. On or about December 3, 2003, Respondent made a request to the Circuit Court for Baltimore City for the summons to be reissued. In January 2004, Horne received an Affidavit prepared by Respondent. Horne signed this document, had it notarized on February 2, 2004, and then returned it to Respondent.

"On or about March 1, 2004, Respondent filed an Affidavit of Service on the defendant in the Horne litigation, which incorrectly indicated that service had been accomplished by certified mail on January 15, 2003. On or about March 1, 2004, Respondent filed a Motion for an Order of Default, which included the Affidavit signed by Horne. On or about March 17, 2004, the court issued an Order of Default. On or about March 9, 2004, Horne's spouse filed a Counter-complaint for Absolute Divorce. On or about April 26, 2004, the Circuit Court for Baltimore City vacated the Order of Default.

"In March or April 2004, Respondent and Horne met. Horne testified that Respondent told him that his office was in the District of Columbia and that Respondent asked for more money. Horne asked Respondent for his address, which

Respondent did not provide. Horne refused to pay Respondent any additional money. Thereafter, Horne engaged new counsel, and, on or about April 22, 2004, Horne delivered a letter to Respondent advising that Respondent was discharged and requesting that Respondent provide the file to new counsel. On or about April 26,2004, Respondent's appearance was stricken.

"Respondent failed to refund the unearned portion of the fee paid by Horne. Respondent failed to withdraw from representing Horne when Respondent knew that his physical or mental condition materially impaired his ability to do so.

"On or about December 9, 2003, the Attorney Grievance Commission of Maryland received a complaint from Horne concerning Respondent's conduct. In his Complaint, Horne requested a refund of the fees paid to Respondent.

"On or about December 29, 2003, Bar Counsel sent Respondent a letter notifying Respondent of the Complaint and requesting a written response within 15 days. Respondent failed to respond to Bar Counsel's letter and on or about January 20, 2004, Bar Counsel sent a second letter to Respondent notifying him of the Horne Complaint and requesting a written response. On or about January 26, 2004, Bar Counsel received a letter dated January 21, 2004, from Respondent, in which Respondent represented that Horne's divorce Complaint was filed on December 3, 2003.

"On or about February 3, 2004, Bar Counsel sent another letter to Respondent seeking additional information about the Horne Complaint. Respondent failed to respond to Bar Counsel's letter of February 3, 2004 and on or about February 10, 2004, Petitioner's investigator, Dennis Biennas, sent Respondent a letter requesting that he provide certain documents relating to his representation of Horne. This letter was sent to Respondent's last known address as provided in Respondent's letter to Bar Counsel dated January 21,2004. Biennas' letter was returned by the United States Postal Service. The February 10, 2004, letter was sent by facsimile to the number appearing on Respondent's letterhead.

"On or about March 1, 2004, Biennas went to the address provided by Respondent however, he was unable to locate Respondent. On or about March 1,2004, Biennas spoke by telephone with Respondent. Respondent provided a new address and facsimile number. Biennas then sent his letter of February 10, 2004, to the address provided by Respondent. Respondent still failed to respond to the investigator's letter of February 10, 2004.

"On or about April 15,2004, Petitioner received a letter from G. Elliott Rose, M.D., which pertained to Respondent's medical condition. On or about May 5, 2004, Bar Counsel received a letter from Respondent which included what purported to be a copy of Respondent's file for his representation of Horne. On May 6, 2004, Petitioner's counsel sent Respondent a letter acknowledging the letter from Dr. Rose and seeking additional information. Respondent did not respond to this letter.

"During times relevant to this Petition, Respondent failed to notify the Client Protection Fund of the Bar of Maryland of his change/changes of address.

"At the hearing on May 23, 2005, Respondent made a refund of $250 to Horne."

From these findings, the hearing court concluded that the respondent had, in fact, committed most of the Rules violations charged.[19] Specifically, it was satisfied that the respondent acted incompetently, in violation of Rule 1.1, did not abide by his client's representation objectives, in violation of Rule 1.2, failed to act diligently in providing the requested representation, in violation of Rule 1.3 and Rule 3.2, did not keep his client reasonably informed about the status of his case or promptly comply with reasonable requests for infor-

---

19. The hearing court reported that the petitioner alleged only violations of the Rules of Professional Conduct and two other Rules, §§ 16–604 and 16–607. In the Petition for Disciplinary or Remedial Action was included as a charged violation, in addition, § 16–609 and Maryland Code (1957, 2004 Repl.Vol.) § 10–306 of the Business Occupations and Professions Article. Because the petitioner does not except to the hearing court's findings and conclusions, it may be presumed that the petitioner abandoned those charges.

mation, in violation of Rule 1.4(a), by not depositing the fees advanced in connection with the representation in an attorney trust account, in violation of Rule 16–604, failed to keep the client's funds separate from his own funds, in violation of Rule 1.15(a) and to promptly return unearned fees to the client in violation of Rule 1.15(b) and Rule 1.16(d) and did not respond to the reasonable demands for information made by Bar Counsel, in violation of Rule 8.1(b). In addition, the hearing court found a violation of Rule 8.4(d):

> "Respondent's failure to promptly, completely and truthfully respond to Bar Counsel's requests for information, to keep his client advised of the status of the representation and to diligently represent the complainant constitutes conduct which tends to bring the legal profession into disrepute and is therefore prejudicial to the administration of justice. . . ."

The hearing court "[wa]s not convinced that Respondent knowingly made a false statement of material fact to Bar Counsel in violation of MRPC 8.1(a), believing that his error with respect to when he filed the Complaint for Absolute Divorce "was the result of sloppiness and lack of care and not a purposeful lie.'" In addition, the court did not find a violation of Rule 1.4(b) and Rule 16–607, noting that the petitioner did not contend that there was clear and convincing evidence to establish either.

The respondent raised his mental health, as testified by Dr. Jeffrey S. Janofsky, retained by the petitioner to conduct the assessment, as a mitigating factor. As to that issue, the hearing court opined:

> "This Court finds, by a preponderance of the evidence, that Respondent suffered from a serious and debilitating psychiatric disorder, major depression, during his representation of Horne and the investigation by Petitioner's office and that this condition affected his ability in normal day to day activities to a substantial degree, and that these conditions contributed to Respondent's professional misconduct. *Attorney Grievance Commission v. Vanderlinde*, 364 Md. 376, 417–418, 773 A.2d 463, 488 (2001). As such, this Court finds

Respondent's mental condition to be a mitigating and/or extenuating factor. This Court also finds the fact that Respondent did not act with a dishonest or selfish motive to be another mitigating factor."

The respondent's efforts at restitution and his cooperation, notwithstanding both being belated and untimely, the court determined to be other mitigating factors. In addition, it concluded:

"There is some evidence that Respondent has attempted to rehabilitate himself as a result of these proceedings. He is being treated for depression. Respondent indicated that he is currently exploring aids for professionals with physical problems and now recognizes and feels motivated, willing and able to address his shortcomings. Respondent, however, presented no evidence of a specific plan or course of action." [20]

Neither the petitioner nor the respondent has taken exceptions to the hearing court's findings of fact or conclusions of law. The petitioner has, however, filed *Petitioner's Recommendation for Sanctions*, in which, acknowledging and accepting the hearing court's mitigation findings, but noting its observation that the respondent did not present "evidence of a specific plan or course of action," it recommends that the respondent be indefinitely suspended from the practice of law.

The respondent, by order dated October 14, 2004, having been found to have violated Rules 1.15(a), 8.1(b) and 8.4(d) of the Rules of Professional Conduct, was suspended indefinitely from the practice of law, with the right to seek reinstatement

---

**20.** This mitigating finding is based on the following observation that the hearing court had previously made:

"In addition to the mental disorder, Respondent also suffers from cerebral palsy, a lifelong condition which makes his ability to function as an attorney difficult. Respondent's handwriting is slow and difficult to read. He is not able to use a standard keyboard and has never been evaluated for use of other assist devices. Respondent had accommodations for his physical disabilities during law school and the bar examination and passed the examination on the first try but, after graduating Respondent has not sought accommodation for his physical impairments because of embarrassment and pride."

in six months. *Attorney Griev. Comm'n v. Rose,* 383 Md. 385, 859 A.2d 659 (2004). He has not applied for reinstatement. The respondent appeared at oral argument and confirmed to the Court that he had been suffering from depression, that he had sought, and was continuing, treatment for that disorder. He also confirmed that he was not, and had not been practicing law since his suspension.

We adopt the petitioner's recommendation and order the respondent indefinitely suspended from the practice of law. Like the petitioner, we are persuaded that this is the appropriate sanction, given the mitigating factors the hearing court found and the fact that the respondent's rehabilitation efforts, although ongoing and, we believe sincere, are not clearly defined or particularly specific. As in the prior case, *Attorney Griev. Comm'n v. Rose,* 383 Md. at 392, 859 A.2d at 663, we note that there is no allegation of dishonesty or misappropriation. Indeed, the hearing court specifically concluded that the respondent's misconduct relating to the advanced fee was not the result of, or motivated by, dishonesty.

In the prior case, we offered a word of caution, *id.* at 393, 859 A.2d at 663: "The respondent is reminded that, having introduced the subject of depression, admitting to suffering from it, any petition for reinstatement will have to address the respondent's then present mental condition, as well as his overall fitness to resume the practice of law." That caution remains operative.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST SHUAN H.M. ROSE.