## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND *v.* THEODORE BRYAN McINTIRE, JR.

[Misc. Docket (Subtitle BV) No. 29, September Term, 1978.]

*Decided September 18, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*Charles O. Fisher, Sr.,* for Theodore Bryan McIntire, Jr.

*James A. Frost, Assistant Bar Counsel,* for Attorney Grievance Commission of Maryland.

MURPHY, C. J., delivered the opinion of the Court. DIGGES, ELDRIDGE and COLE, JJ., dissent and ELDRIDGE, J., filed a dissenting opinion in which DIGGES and COLE, JJ., concur at page 96 *infra.*

The Attorney Grievance Commission, through Bar Counsel, filed a petition for disciplinary action, pursuant to Maryland Rule BV9, against Theodore Bryan McIntire, Jr., alleging violations of Disciplinary Rule 9-102 (A) (1) and (2) and (B) (3) and (4), which provides:

> "DR 9-102 Preserving Identity of Funds and Property of a Client.
>
> "(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
>
> (1) Funds reasonably sufficient to pay bank charges may be deposited therein.
>
> (2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion

shall not be withdrawn until the dispute is finally resolved.

"(B) A lawyer shall:

    (1) ...

    (2) ...

    (3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

    (4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

The matter was referred to Judge Guy J. Cicone of the Circuit Court for Howard County to make findings of fact and conclusions of law pursuant to Maryland Rule BV9. After conducting an evidentiary hearing, Judge Cicone filed his findings and conclusion as follows:

"The matter arises initially from a fee dispute between the Respondent and his former client, Mrs. Margery Lou Poetzman. The factual background is, generally, undisputed.

Respondent McIntire was retained by Mrs. Poetzman in January, 1976 concerning a divorce matter. She initially stated to Respondent that the case would not be contested by her husband. She was told that Respondent's fee for an uncontested divorce was $400.00. The matter was not, however, uncontested; the bill of complaint for divorce a vinculo matrimonii and for custody and child support was filed March 1, 1976 but it was not until January 25, 1977 that the Circuit Court for Carroll County (Judge E. O. Weant, Jr.) rendered a decision. The Court ruled in favor of Mrs. Poetzman on the divorce and awarded her $100.00 per week alimony and $75.00 per week child support.

The Court (to Mr. McIntire's disappointment) awarded $600.00 in attorney's fees, a sum Respondent felt should have been higher, to be paid by the husband to Respondent and

found the husband in arrears in the amount of $963.53. After contempt proceedings were initiated, a check in the amount of $1,563.53 was sent to Mr. McIntire, payable solely to him, by counsel for the husband. The accompanying letter of April 19, 1977 demonstrates that $600.00 of the check funds was intended to be counsel fees.

Respondent and Petitioner [Mrs. Poetzman] met in Respondent's office on April 26, 1977 at which time Mr. McIntire showed his client the check received and asked if he could apply $500.00 of it towards his fee, which he indicated was more than $2,000.00. It is here that the essential dispute arises.

Mrs. Poetzman had paid Mr. McIntire a $150.00 retainer on February 11, 1976 and an additional $400.00 on March 1, 1976. According to Mr. McIntire, however, these payments did not constitute the entire fee; he stated that he and his client mutually understood and agreed from or shortly after the initial meeting that his fee for a contested divorce would be $50.00 per hour. He also stated that he had devoted 40.9 hours of his time to the case. Time sheets shown to this Court were also shown to Judge Weant before counsel fees were awarded in the divorce action. As per the agreement according to Respondent, the total fee for the divorce would be in excess of $2,000.00. Mrs. Poetzman testified that she never agreed to a $50.00 per hour arrangement and understood that the payments already made by her would be the extent of her financial obligation to Mr. McIntire. No written fee agreement was ever entered into and no confirmatory letter regarding fees was ever sent.

Mrs. Poetzman testified she was 'thunderstruck' and 'flabbergasted' at the April 26 meeting and left Mr. McIntire's office without responding to his suggestion that $500.00 of the check be devoted to his fee. She stated that she had understood Mr. McIntire to mean that the $500.00 figure would be over and above the $600.00 in fees awarded by the Court. Mr. McIntire, on the other hand, testified that he was willing at that meeting to endorse the entire check to Mrs. Poetzman, if she had so requested, and that the $500.00 figure he suggested would not have been over and above the $600.00 awarded him.

After leaving the office, Mrs. Poetzman subsequently employed new counsel, William R. MacDonald, and left a message with Mr. McIntire's office that Mr. McIntire was discharged from the case. Mr. MacDonald testified that Mrs. Poetzman wanted him to collect the $963.53 of the check proceeds to which she was entitled. But once it was clear the problem was a fee dispute he suggested that she consult the Grievance Commission. He did, however, talk to Mr. McIntire and indicated that a fee dispute existed regarding Mrs. Poetzman.

After being discharged from the case, Mr. McIntire sent a letter to Mrs. Poetzman indicating his total fee for the divorce and showing a balance due, to which she did not respond. He testified that this constituted acceptance by silence of her as to the fee arrangement. Several months later, he cashed the check and later applied the entire amount to his personal account.

The Grievance Commission began an inquiry into the matter. A Petition for Disciplinary Action was filed with the Court of Appeals on January 11, 1979. After grievance procedures had begun and on advice of his own counsel Mr. McIntire remitted to Mrs. Poetzman $963.53 on March 5, 1979.

Disciplinary Rule 9-102 concerns preserving the identity of client funds and property. Subsection (A) requires an attorney to keep separate and identifiable bank accounts for client funds and subsection (B) requires, among other things, that clients be promptly paid those funds entitled to them and that complete records of all funds and accounts be kept. The Grievance Commission has charged Respondent with violations of 9-102 (A) (1) and (2) and with 9-102 (B) (3) and (4).

*Findings of Facts*

Based upon documents, exhibits, and testimony before this Court, the following findings of fact are made relevant to these charges:

(1) Mrs. Poetzman was not fully apprised by Mr. McIntire of the fee arrangements if her divorce matter was contested.

(2) Mrs. Poetzman never agreed, whether the matter was contested or not, that Mr. McIntire would be paid $50.00 per hour for time spent on her case.

(3) No written fee agreement or confirmatory letter was agreed upon between Mrs. Poetzman and Mr. McIntire.

(4) Mrs. Poetzman paid $550.00 to Mr. McIntire and Judge Weant awarded $600.00 to Mr. McIntire, which Mrs. Poetzman believed to be the entire fee to which Mr. McIntire was entitled.

(5) A check for the amount of $1,563.53 was received by Mr. McIntire payable to him representing $963.53 due Mrs. Poetzman and $600.00 due Mr. McIntire.

(6) At a meeting on April 26, 1977 Mr. McIntire made a suggestion to Mrs. Poetzman that $500.00 of the check be applied toward a fee in excess of $2,000.00.

(7) Mrs. Poetzman left Mr. McIntire's office after that meeting, did not have any further communication with him and employed new counsel.

(8) A bill was sent by Mr. McIntire to Mrs. Poetzman on May 16, 1977 indicating his fee and a balance due after crediting her with the $550.00 already paid. This communication received no response from Mrs. Poetzman.

(9) On May 12, 1977, Mr. McIntire cashed the $1,563.53 check and placed the entire proceeds in an office safe in an envelope marked with the name of the file.

(10) Sometime in July of 1977 Mr. McIntire placed the entire proceeds of that check in a personal account and used such proceeds. No record in other office accounts was made of the check transaction.

(11) Mr. McIntire did not remit any amounts from the check to Mrs. Poetzman until March 5, 1979 when on advice of counsel he paid her $963.53.

*Conclusions of Law*

Based upon the above findings of fact, this Court makes the following conclusions of law in this matter:

(1) Mr. McIntire's argument that he had an 'attorney's lien' for his fee, representing compensation on a quantum

meruit basis, is not borne out. Reliance by counsel for Mr. McIntire upon *Boyd v. Johnson,* 145 Md. 385, 125 A. 697 (1924) and *Ashman v. Schechter,* 196 Md. 168, 76 A.2d 139 (1950), both decided before the Disciplinary Rules were adopted to govern attorney conduct, is misplaced. These cases establish that quantum meruit or liens may be applied in an attorney's case, but *Boyd* dealt with a contingent fee agreement and *Ashman* apparently concerned a specific agreement for "fair value of services" which included arbitration and in that context discussed attorney's liens upon real property. The contract between the parties in this matter was final and its terms, clear. The $550.00 paid by Mrs. Poetzman was the extent of her financial obligation. By its terms, quantum meruit is a method of obtaining a reasonable value for services, absent a clear and understood contract or, for example, for partial performance when an entire contract has been rescinded. *See generally* 17 Am Jur 2d *Contracts* Sec. 83 and Sec. 379-384, *Laurel Race Course v. Regal Construction Co.,* 274 Md. 142, 333 A.2d 319 (1975) and *Norris v. Ald New York, Inc.,* 227 Md. 110, 175 A.2d 749 (1962), which cases generally demonstrate that once a contract for services is formed, its terms are to be followed.

(2) Mrs. Poetzman cannot be charged with having accepted by silence the fee arrangement as indicated by the May 16, 1977 letter sent to her by Respondent. Generally, silence is not to be considered an acceptance of any offer. *See* 17 Am Jur 2d *Contracts* Sec. 47. And it will not be so considered unless the other party had a duty to accept or reply or if the parties had previously agreed that silence would be an acceptance. *See Corbin on Contracts* Sec. 73-75.

When Respondent was contacted by Mr. MacDonald following Mrs. Poetzman's employment of new counsel and was told that there was a 'dispute about the fee', Respondent was on notice, although through a third party, that Mrs. Poetzman's silence was not to be regarded as acceptance.

(3) Mr. McIntire had no legal basis to retain the entire proceeds of the check of $1,563.53, to cash same, or to apply the entire amount to his funds. The larger portion was to be paid to Mrs. Poetzman as arrearages awarded to her by the

Court. On the matter of payment to clients of funds entitled to them, see the recent disciplinary cases of *Attorney Grievance Commission v. McBurney,* 392 A.2d 81 (1978) and *Attorney Grievance Commission v. Flynn,* 283 Md. 41, 387 A.2d 775 (1978). Though Mr. McIntire has paid Mrs. Poetzman the $963.53, it has been stated that restitution or acting in good faith is not a defense. *Sevin v. State Bar,* 8 Cal. 3d 641, 105 Cal. Rptr. 513, 504 P.2d 449, 452 (1973), *Silver v. State Bar,* 13 Cal. 3d 134, 117 Cal. Reptr. 821, 528 P.2d 1157, 1164 (1974).

(4) It is also clear that the funds from the check were not deposited in proper accounts. The check proceeds were first placed in an office safe, then in a personal account and finally used by Mr. McIntire.

(5) Therefore, this Court finds that Respondent HAS VIOLATED:

(a) DR 9-102 (A) (2) in that the funds were not placed in proper accounts,

(b) DR 9-102 (B) (3) in that proper financial records of the transactions were not kept,

(c) DR 9-102 (B) (4) in that the client was not promptly paid those funds which were due her, BUT THAT

(d) DR 9-102 (A) (1) was not violated, since sufficient funds to pay the check were on hand in the proper accounts."

McIntire filed exceptions to Judge Cicone's factual findings, contending that there was no clear and convincing evidence (1) that Mrs. Poetzman was not fully apprised of the fee arrangements if her divorce matter was contested and (2) that she never agreed, whether the matter was contested or not, to pay a counsel fee of $50 per hour. McIntire argues that Judge Cicone erred in concluding that $550 was the extent of Mrs. Poetzman's "financial obligation" for legal services rendered in her divorce case. He asserts that the evidence showed that discussion of the $550 payment was solely in the context of services rendered in securing an uncontested divorce; that this is evident from the fact that he maintained hourly time records contemporaneously with the rendering of his services in the contested divorce action, reflecting his $50

per hour rate; and that his suggestion to Mrs. Poetzman that she could pay him $500 from the proceeds of the check toward his total fee demonstrates that there was an agreement for an additional fee for services rendered in the contested action.

We have carefully reviewed the transcript of the hearing before Judge Cicone and closely examined the testimony of McIntire and Mrs. Poetzman. It is clear from the evidence that nothing more is involved than a genuine fee dispute between lawyer and client, without any intentional wrongdoing, deceit, or dishonesty on McIntire's part. While Judge Cicone accepted Mrs. Poetzman's testimony that she did not agree personally to pay McIntire more than $550 under any circumstances, this finding was made in the context of her not having been "fully apprised" by McIntire of the fee arrangements should the case involve a contested divorce. It was Mrs. Poetzman's "belief," according to Judge Cicone's findings, that "the entire fee to which Mr. McIntire was entitled" was the $550 which she paid to him and the $600 awarded by the court, payable by her former husband.

There being no written fee agreement in existence, McIntire was clearly on notice that his understanding of the fee agreement was not shared by his client, but rather was vigorously disputed, so much so that Mrs. Poetzman engaged counsel to assist her in protesting the amount which McIntire claimed. In these circumstances when McIntire cashed the check, he was required by DR 9-102 (A) to deposit the funds in an escrow account and to withdraw therefrom only that amount for his own personal use that concededly belonged to him, in this instance $600. McIntire violated the rule by placing the proceeds of the check in his office safe and thereafter using the funds in their entirety for his own purposes. No accounting was made to Mrs. Poetzman of the disposition of the check proceeds and McIntire was completely unjustified in the circumstances in assuming that his client had accepted his version of the fee agreement and acquiesced in his appropriation of the entire check proceeds to his own use.

McIntire also excepted to Judge Cicone's conclusions of law (1) that he was not entitled to be compensated on the basis

of *quantum meruit* and (2) that he had no legal basis to assert a lawyer's retaining lien on the proceeds of the check.

It is evident from the record that McIntire, in cashing the check and applying the proceeds to his personal account, did so on the ground that he was entitled to the funds under the express terms of what he believed to be a $50 per hour contract for services with Mrs. Poetzman. His actions were not predicated on any application of principles of law governing a *quantum meruit* recovery and justifying the assertion of a lawyer's retaining lien on the check proceeds. While such a lien is recognized in Maryland, it is, generally speaking, a passive lien on the papers, securities and money belonging to a client coming into the lawyer's possession in the course of his professional employment; it cannot, however, be enforced either at law or in equity. *See Campen v. Talbot Bank of Easton,* 271 Md. 610, 319 A.2d 125 (1974); *Ashman v. Schecter,* 196 Md. 168, 76 A.2d 139 (1950). Thus, even where such a lien may be validly asserted as to client funds in the possession of an attorney, the dictates of DR 9-102 would seem to require that the funds in dispute be deposited in a proper escrow account, and not, as here, appropriated to the lawyer's own use without independent resolution of the underlying fee controversy.

We conclude that, as found by Judge Cicone, McIntire violated DR 9-102 (A) by not depositing the check in a proper escrow account, and also violated DR 9-102 (B) (3) in failing to render an appropriate account to his client regarding the disposition of the check proceeds. We think a reprimand is the appropriate sanction for McIntire's conduct which, as we said earlier, did not involve intentional wrongdoing, deceit or dishonesty.

*It is so ordered; McIntire to pay all transcript costs.*

*Eldridge, J., dissenting:*

The majority concludes, and I agree with the conclusion, that "nothing more is involved [in this case] than a genuine

fee dispute between lawyer and client, without any intentional wrongdoing, deceit or dishonesty on McIntire's part." The majority opinion later reiterates that Mr. McIntire's conduct "did not involve intentional wrongdoing, deceit or dishonesty." In light of this, I believe that a formal reprimand, published for all time in the volumes of the Maryland Reports and the Atlantic Reporter, is too severe a sanction and unfair to an honorable attorney.

In my view, a minor *unintended* violation of the disciplinary rules, involving nothing more than a *genuine* fee dispute, warrants only an informal, unreported admonition to the attorney involved. This clearly would be sufficient to protect the public interest. With regard to an ethical attorney who, through oversight or unawareness, *unintentionally* commits a minor technical violation of the disciplinary rules, the mere occurrence of proceedings such as these will insure that the same thing does not happen again.

Normally a matter such as this is satisfactorily handled by an informal reprimand or admonition from the Review Board, and it never reaches this Court. When such a case does reach this Court, we should, in my judgment, deal with it in the same manner.

Judges Digges and Cole have authorized me to state that they concur with the views expressed herein.