904 A.2d 422

## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

**Uzoma C. OBI.**

**Misc. AG No. 11, Sept. Term, 2005.**

Court of Appeals of Maryland.

Aug. 1, 2006.

644

John C. Broderick, Assistant Bar Counsel Attorney Grievance Commission of Maryland, for petitioner.

John O. Iweanoge, Jr., Bowie, for respondent.

**646**　

Argued before BELL, C.J., WILNER, CATHELL, HARRELL, BATTAGLIA, GREENE and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

GREENE, J.

Pursuant to Maryland Rule 16–751 [1] of the Maryland Lawyers' Rules of Professional Conduct (MRPC), the Attorney Grievance Commission (the "Commission" or "Bar Counsel"), acting through Bar Counsel, filed a petition for disciplinary or remedial action against Uzoma C. Obi, Esquire ("Respondent"), charging him with violations arising out of his handling of his client trust account, particularly his commingling of personal funds within the account. The Commission alleged violations of MRPC 1.15 (Safekeeping Property),[2] 8.1(b) (Bar Admission and Disciplinary Matters),[3] 8.4(d) (Miscon-

---

**1.** Maryland Rule 16–751, as relevant, provides:

(a) Commencement of disciplinary or remedial action.

(1) Upon approval of the Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

**2.** Rule 1.15 states:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

\* \* \* \* \* \*

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

**3.** Rule 8.1 provides in relevant part:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

duct),[4] and Maryland Rules of Procedure (MRP) 16–607 (Commingling of Funds)[5] and 16–609 (Prohibited Transactions).[6]

Pursuant to Maryland Rule 16–752(a), we referred the petition to Judge Michele D. Hotten of the Circuit Court for Prince George's County to conduct an evidentiary hearing and

---

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

4. Rule 8.4 states that, "It is professional misconduct for a lawyer to: ... (d) engage in conduct that is prejudicial to the administration of justice[.]"

5. Rule 16–607 provides:

a. **General Prohibition.** An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16–604 or permitted to be so deposited by section b. of this Rule.

b. **Exceptions.** 1. An attorney or law firm shall either (A) deposit into an attorney trust account funds to pay any fees, service charges, or minimum balance required by the financial institution to open or maintain the account, including those fees that cannot be charged against interest due to the Maryland Legal Services Corporation Fund pursuant to Rule 16–610 b 1(D), or (B) enter into an agreement with the financial institution to have any fees or charges deducted from an operating account maintained by the attorney or law firm. The attorney or law firm may deposit into an attorney trust account any funds expected to be advanced on behalf of a client and expected to be reimbursed to the attorney by the client.

2. An attorney or law firm may deposit into an attorney trust account funds belonging in part to a client and in part presently or potentially to the attorney or law firm. The portion belonging to the attorney or law firm shall be withdrawn promptly when the attorney or law firm becomes entitled to the funds, but any portion disputed by the client shall remain in the account until the dispute is resolved.

3. Funds of a client or beneficial owner may be pooled and commingled in an attorney trust account with the funds held for other clients or beneficial owners.

6. Rule 16–609 addresses prohibited transactions, and provides:

An attorney or law firm may not borrow or pledge any funds required by these Rules to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose. An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer.

submit to this Court her proposed findings of fact and conclusions of law. Pursuant to Maryland Rule 16–757(c), Judge Hotten conducted a hearing on September 7, 2005, and submitted her findings and conclusions on October 6, 2005. She found, by clear and convincing evidence, that Respondent had violated MRPC 1.15 and 8.1(b), as well as MRP 16–607 and 16–609. Respondent filed exceptions to Judge Hotten's findings of fact and conclusions of law. Petitioner filed no exceptions.

## BACKGROUND

The commingling of funds by Respondent first came to Bar Counsel's attention when Chevy Chase Bank notified Bar Counsel that Respondent's client trust account was overdrawn. Subsequently, Bar Counsel informed Respondent of the overdraft, to which Respondent replied that the check in question was used to pay the tuition of one of his children. Respondent admitted that this constituted commingling and said that he appreciated the severity and possible consequences of his conduct. He further assured Bar Counsel that the funds in the account were not client funds, but were his personal funds for services rendered. Bar Counsel's subsequent investigation uncovered other instances of such commingling.

In the course of the investigation Respondent failed to provide certain documents that were requested by Bar Counsel. Following an investigation, Respondent was charged with violating the MRPC. We now summarize the pertinent findings of fact and conclusions of law of the hearing judge with respect to the complaint of Bar Counsel.

Respondent, Uzoma C. Obi, age 35, received his law degree from the University of Maryland School of Law in May of 1998 and was admitted to the Maryland Bar on December 16, 1998. He has never taken any course on the handling of escrow accounts. Respondent has been a sole practitioner, based in Prince George's County, Maryland, since August of 2000. Respondent's areas of practice include family law, criminal law, and personal injury. Prior to August of 2000, Respon-

dent worked for a business consulting firm in the District of Columbia.

On January 14, 2004, Chevy Chase Bank informed Bar Counsel that an IOLTA account in the name of Respondent ("the account") was overdrawn in the amount of $1,600.00 as a result of a check presented on November 17, 2003. Consequently, Bar Counsel contacted Respondent requesting a full explanation and an examination of Respondent's escrow account from the period between July 2003 and December 2003. Bar Counsel also requested "copies of [Respondent's] client ledger cards, deposit slips, cancelled checks, and monthly bank statements for each month of the pertinent period of time stated." According to the testimony of John DeBone ("Mr. DeBone"), a paralegal employed by the Office of Bar Counsel, the client ledger accounts were requested in order to determine the extent of any client funds in the account.

Respondent replied on January 20, 2004, and explained that the overdraft was the result of a check he wrote to pay his children's private school tuition. He admitted that this constituted commingling of personal funds and assured Bar Counsel that he fully understood the severity and potentially dire consequences of his conduct. Respondent attributed his conduct to a "temporary lapse in professional judgment" resulting from his wife's ill health and corresponding financial consequences and the impact of a "slow economy" on his law practice. He further stated that the funds in the account represented his own earned revenue. Attached to the letter Respondent provided: a copy of the front and back of a $1,600 check to the St. Mark's School dated November 14, 2003; a page from Respondent's "cash receipt journal" for the period between July 1, 2003, and December 12, 2003; a page from a "check register" for the same period; and six pages representing copies of a "statement of account" from Chevy Chase Bank for the account dated July 15, 2003, August 14, 2003, September 15, 2003, November 15, 2003, December 12, 2003, and January 15, 2004. Respondent submitted no client ledger cards or deposit slips, no copy of the October 2003 bank

statement, nor did he submit copies of checks drawn on his escrow account for the relevant period provided.

Subsequently, by letter dated April 12, 2004, Bar Counsel contacted Respondent. Bar Counsel requested: a copy of the October 2003 bank statement; statements for the earlier part of 2003, including "copies of all checks and transactions drawn against the account"; and "copies of all deposit slips and deposited items and credits to the account" within twenty days. Bar Counsel further advised Respondent that "the gravamen" of the investigation related to the $1,600.00 overdraft and that the analysis of the bank records then available revealed, "commingling and suspected misuse of fiduciary funds."

On April 28, 2004, Respondent requested an extension of the twenty-day response deadline, which Bar Counsel granted, extending the deadline to May 17, 2004. Respondent replied by letter, with attachments, dated May 18, 2004. The attachments included: a single page copy of Respondent's "Cash Receipts Journal;" copies of sixteen checks from the account payable to Respondent in various amounts between January 18, 2003 and February 20, 2004; a check from the account payable to Abeba Zegata dated February 20, 2004; and copies of Chevy Chase Bank statements for the account representing numerous dates.[7] Respondent was not asked to provide specific files for the account. No supporting documentation was provided with the cash receipts journal pages by which its entries could be verified.

Bar Counsel issued a subpoena to the custodian of records for Chevy Chase Bank and to Respondent seeking copies of "bank statements, deposit slips, deposited items, front and back of all checks and any and all transactions into and out" of the account. On or about July 30, 2004, Bar Counsel received

---

7. The statements represented the following dates: January 15, 2003; February 13, 2003; March 14, 2003; April 14, 2003; May 14, 2003; June 13, 2002; July 15, 2003; August 14, 2003; September 15, 2003; October 15, 2003; November 13, 2003; December 12, 2003; January 15, 2004; February 12, 2004; March 12, 2004; and April 14, 2004.

from Chevy Chase Bank copies of its records of the account. As reflected by these records, Respondent drew eighteen checks against the account, one payable to a client, and the rest payable to Respondent. About seventy-three transactions were reflected, including a cash withdrawal of twenty thousand dollars.

Mr. DeBone compiled and analyzed the records of the account received from Chevy Chase Bank, which included: checks payable to Respondent; deposits for client Richard Chambers; deposits for client Nwaogu; a withdrawal from the account to Wells Fargo; and deposits and disbursement activity regarding client Zegata. Mr. DeBone was unable to resolve the balances of the trust account as reflected in the Chevy Chase Bank statements versus the balances reflected in his analysis. Mr. DeBone ultimately could not unequivocally conclude that the funds in the account during the relevant period belonged to clients. Sixteen checks were posted against Respondent's account, none of which were payable to a client. Mr. DeBone did not request specific client files to coincide with transactions related to the account during the relevant period and did not initiate contact with specific clients which may have been identified in the documents received. Mr. DeBone did not have personal knowledge regarding the fee arrangements between Respondent and any client identified in the available documents.

On September 16, 2004, Bar Counsel sent Respondent a letter alleging that he had "failed to account and to ... respond to a lawful request for information in connection with the disciplinary investigation of [his] handling of fiduciary funds" and that a statement of charges would be forwarded to a Peer Review Panel for consideration of the relevant Rules of Professional Conduct regarding the commingling of funds. Respondent replied on September 22, 2004, challenging Bar Counsel's decision. Respondent attached to the letter the front and back of checks from the account between January 18, 2003, and February 20, 2004. Sixteen of the seventeen copies of checks were payable to Respondent and one was payable to Zegata. No client ledger sheets were ever provid-

ed. Respondent did not know what a "client ledger card" was and thus submitted pages from his personal business ledger. He also later explained that his Wells Fargo transaction was a mortgage payment.

## CONCLUSIONS OF LAW

The hearing judge made the following conclusions of law:

1. Mr. Obi knowingly commingled personal funds in the client trust account, and utilized the trust account for personal matters, in violation of Maryland Rule of Professional Conduct 1.15 (Safekeeping of Property), and Maryland Rule 16–607. In this regard, the Court relies upon Petitioner's Exhibit 3 (the December 31, 2003 letter from Chevy Chase Bank), which advised Bar Counsel that Mr. Obi's IOLTA account was overdrawn in the amount of $1,600.00 as a result of a personal check presented on November 17, 2003 by Mr. Obi for payment of his children's school tuition, for which a non-sufficient fund fee of $32.00 was assessed. Mr. Obi admitted the account was overdrawn as a result of the personal check. Mr. Obi drew eighteen checks against the client trust account between December, 2003 and June, 2004, seventeen of which were payable to him. Mr. Obi admitted that he had commingled personal funds in the client trust account but claimed ignorance of the rules prohibiting such conduct. He failed to keep personal funds separate from the trust account. He also failed to maintain "complete records" as required by Rule 1.15 to ensure that client funds were appropriately identified and safeguarded to avoid even the appearance of commingling.

2. Maryland Rule 16–607 provides that "[A]n attorney . . . may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16–604 or permitted to be so deposited by section b of this Rule[.]" Mr. Obi violated this Rule by depositing and maintaining his personal funds in the client trust account, as reflected by his own testimony and the Chevy Chase Bank records.

3. Mr. Obi violated Maryland Rule 16–609(Prohibited Transactions) which provides, *inter alia,* that "[A]n instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer[.]" Mr. Obi drew seventeen of eighteen checks between December, 2003 and June, 2004 to himself. As reflected in the October and November, 2003 bank statements from Chevy Chase Bank, Mr. Obi electronically transferred funds on two occasions from the client trust account in addition to a withdrawal of $7,836.05 to a Wells Fargo Bank account, which Mr. Obi testified were related to the payment of his mortgage. Since there is no apparent nexus between the funds disbursed from the client trust account and identifiable client purposes, Mr. Obi's electronic transfers amount to personal use, not client business, and thus violate Rule 16–609.

4. Mr. Obi violated Maryland Rule of Professional Conduct 8.1(b) by failing to provide the front and back of deposit slips and ledger cards as requested by the Office of Bar Counsel . . . which could have enabled Bar Counsel to clearly identify transactions in and out of the client trust account in order to completely address the propriety of Mr. Obi's use of the account and its fiduciary funds. Mr. Obi did not deny the allegation that he failed to comply with Bar Counsel's request.

## DISCUSSION

Bar Counsel filed no exceptions to the Circuit Court's findings of fact and conclusions of law. Respondent took exception to the following factual findings: (1) that "per testimony of . . . [Mr.] DeBone[,] . . . client ledger accounts were requested to determine the extent of any client funds in [Respondent's] account; (2) that no supporting documentation was provided with the cash receipts journal pages by which Mr. DeBone could verify the entries; and (3) that no client ledger sheets were provided. Respondent further took exception to the legal conclusions that he violated Rule 16–609 and MRPC Rules 8.1(b) and 1.15(b).

 In attorney discipline proceedings, "this Court has original and complete jurisdiction and conducts an independent review of the record.... [T]he hearing judge's findings of fact generally will be accepted unless they are clearly erroneous." *Attorney Griev. Comm'n v. Kapoor*, 391 Md. 505, 529–30, 894 A.2d 502, 517 (2006) (quoting *Attorney Griev. Comm'n v. Cherry–Mahoi*, 388 Md. 124, 152–53, 879 A.2d 58, 76 (2005)). The factual findings of a hearing judge will not be disturbed if based on clear and convincing evidence. *Attorney Griev. Comm'n v. West*, 378 Md. 395, 409–10, 836 A.2d 588, 596 (2003) (citing *Attorney Griev. Comm'n v. Monfried*, 368 Md. 373, 388, 794 A.2d 92, 100 (2002)). The proposed conclusions of law of the hearing judge are reviewed *de novo. Id.* at 410, 836 A.2d at 596 (citing *Attorney Griev. Comm'n v. McLaughlin*, 372 Md. 467, 493, 813 A.2d 1145, 1160 (2002)). Bar Counsel has the burden of establishing the allegations by clear and convincing evidence and Respondent has the burden of proving the existence of mitigating circumstances by a preponderance of the evidence. Md. Rule 16–757(b).

## RESPONDENT'S EXCEPTIONS TO FINDINGS OF FACT

 Respondent objects to the factual finding that Mr. DeBone requested client ledger cards in order to determine the extent of client funds in Respondent's account, arguing that the evidence does not demonstrate that the client ledger cards were necessary to Mr. DeBone's analysis. We overrule this exception. Respondent's assertion that there was no evidence that the materials requested by Bar Counsel were necessary to the investigation is immaterial, as Respondent has an obligation to provide Bar Counsel with any relevant material requested in the course of an investigation. Md. Rule 16–731(c)(1) ("As part of the notice [that Bar Counsel is undertaking an investigation to determine whether the attorney has engaged in professional misconduct], Bar Counsel may demand that the attorney provide information and records that Bar Counsel deems appropriate and relevant to the investigation.").

Respondent's second exception asserts that there is no evidence that Bar Counsel requested supporting documentation along with the cash receipt journal pages. We disagree. It is clear that Bar Counsel's initial letter to Respondent asked for such supporting documentation as: "copies of [Respondent's] client ledger cards, deposit slips, cancelled checks, and monthly bank statements for each month of the pertinent period of time stated." Moreover, in a subsequent letter to Respondent, Bar Counsel requested additional bank statements, including "copies of all checks and transactions drawn against the account" and "copies of all deposit slips and deposited items and credits to the account" within twenty days. Therefore, Respondent's exception is without merit.

Respondent also filed exceptions to the finding that no client ledger sheets were provided, asserting that such a finding "presupposes that [Respondent] prepared and maintained client ledger sheets but failed to provided it to Bar Counsel." Respondent's exception is immaterial as it is his obligation to maintain such records. See *infra* 393 Md. at 656–57, 904 A.2d at 430.

## RESPONDENT'S EXCEPTION TO CONCLUSIONS OF LAW RULE 16–609

In denying that he violated Rule 16–609, Respondent first notes that the purpose of the prohibition on drawing an instrument on a trust account payable to cash or bearer is to ensure that escrow funds are dispersed to identifiable receivers. Respondent argues that he did not issue any check or instrument on the account to cash or bearer but only to himself and to an identifiable Wells Fargo account, neither of which violate the letter or spirit of Rule 16–609. We hold that Respondent violated Rule 16–609, but disagree with the basis upon which the hearing judge found a violation of the rule. We base our conclusion on different grounds. Respondent correctly points out that his transfer of funds from the account to a Wells Fargo account did not violate the Rule because the funds were transferred to an identifiable account, and not to "cash" or to "bearer." While Respondent did not draw an instrument on his trust account that was payable to cash or to

bearer, he did violate the rule by using funds in the account for an unauthorized purpose. The hearing judge, therefore, erred in not citing Respondent's cash withdrawal of twenty-thousand dollars as a violation of the Rule. Cash withdrawals from an escrow account clearly frustrate the Rule's purpose, which is "to enable one who is authorized to do so to trace the disposition of escrow funds." *Attorney Griev. Comm'n v. Harper,* 356 Md. 53, 65, 737 A.2d 557, 563 (1999).

## RULE 8.1(b)

■ Regarding his alleged violation of MRPC Rule 8.1(b), Respondent notes that the evidence clearly shows that he did not maintain deposit slips or client ledger cards, and that Bar Counsel did not specifically request copies of the front and back of deposit slips or checks. Respondent notes that he provided Bar Counsel with his cash receipt journal, which was the relevant record he did maintain that contained information similar to that in a client ledger sheet. Respondent also asserts that, after Bar Counsel subpoenaed Chevy Chase Bank, Respondent reasonably believed any efforts by him to obtain and provide bank records would be duplicitous. We disagree with this contention. Regardless of what Respondent believed about the value of the documents requested, Respondent knowingly failed to respond to a lawful demand for information from a disciplinary authority in connection with a disciplinary matter, in violation of Rule 8.1(b).

## RULE 1.15(a)

■ Respondent argues that his failure to maintain a client ledger sheet does not necessarily constitute a violation of the requirement under Rule 1.15(a) to maintain proper records because the cash receipt journal he maintained contained equivalent information.[8] We overrule this exception. The

---

8. Respondent's commingling of personal funds in the account, which Respondent does not contest, also constitutes a violation of Rule 1.15. MRPC 1.15(a) ("A lawyer shall hold property of clients or third persons that is in a lawyer's possession ... separate from the lawyer's own

Rules Committee Comment ("the Comment") to Rule 1.15 notes that "[a] lawyer should maintain on a current basis books and records in accordance with generally accepted accounting practice and comply with any record keeping rules established by law or court order." In *Attorney Griev. Comm'n v. Roberson*, 373 Md. 328, 818 A.2d 1059 (2003), a reciprocal disciplinary proceeding, the attorney failed to maintain a complete record of client's funds and to account for all trust funds, in violation of Georgia Bar Standards 63 and 65(A),[9] which are that state's equivalent professional responsibility rules. *Id.* at 352, 818 A.2d at 1074. In *Roberson*, a Special Master found, based on a review of the attorney's record keeping of client funds that consisted of only an original settlement statement, bank statements, and cancelled checks, that it was "impossible to tell . . . how much money Roberson received on [the client's] behalf and where it all went." *Id.* Further, the attorney in *Roberson* failed to provide an accounting of all settlement funds received on behalf of a client and held in trust. *Id.* In the present case, Respondent violated Rule 1.15(a) when he failed to maintain a complete record of the account, as required by Rule 1.15(a). Similar to *Roberson*, in the instant case, Respondent's cash receipt journal, check register, statement of account, and cancelled checks failed to provide an adequate accounting of the origin of the funds in his escrow account. More importantly, the documents Respondent produced failed to provide a complete record of the receipt and disbursement of client funds in his possession. Respondent's contention that his manner of record keeping may have yielded similar information to that of record keeping as required by the Rule is immaterial, as his chosen manner of record keeping did not provide the necessary complete accounting of client funds.

---

property."); MRPC 1.15(b) ("A lawyer may deposit the lawyer's own funds in a client trust account for the sole purpose of paying bank service charges on that account, but only in an amount necessary for the purpose.")

9. MRPC 1.15 is the corresponding rule to Georgia Bar Standards 63 and 65(A). *Roberson*, 373 Md. at 349, 818 A.2d at 1072.

SANCTIONS

The purpose of imposing a disciplinary sanction is to protect the public and promote general and specific deterrence, and not necessarily to punish the attorney. *Attorney Griev. Com'n v. Parker,* 389 Md. 142, 155, 884 A.2d 104, 112 (2005) (citing *Attorney Griev. Comm'n v. Culver,* 381 Md. 241, 283–84, 849 A.2d 423, 448–49 (2004)). "Although ignorance does not excuse a violation of disciplinary rules, a finding with respect to the intent with which a violation was committed is relevant on the issue of the appropriate sanction." *Attorney Griev. Comm'n v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997). In cases in which, *inter alia,* a violation of rule 1.15(a) was found, but in which there was no finding of intentional misappropriation, we have imposed sanctions that range widely according to the circumstances of each case. In *Attorney Griev. Comm'n v. McClain,* 373 Md. 196, 817 A.2d 218 (2003), we imposed a thirty day suspension where an attorney violated Rule 1.15 by failing to hold the entire amount of a deposit given him by the successful bidder at a foreclosure sale, and where the attorney violated Rule 16–606 by not properly naming and designating his escrow account as an attorney trust account. *Id.* at 212, 817 A.2d at 228. In support of our decision to impose a suspension we noted, with regard to the violation of Rule 1.15, that "the hearing court did not find clear and convincing evidence that [the violation] was committed willfully or consciously and for an unlawful purpose." *Id.* In addition, the attorney corrected his violation of Rule 16–606, and subsequently enrolled in a course in escrow account management. In addition, the attorney had no history of disciplinary proceedings. *Id. See also Attorney Grievance Comm'n v. Webster,* 348 Md. 662, 679, 705 A.2d 1135, 1143 (1998) (imposing a sanction of suspension for 30 days where attorney, as a result of negligence and not intentional conduct, committed a violation of Rule 1.15(a) by commingling funds in a former escrow account, violated conflict of interest rules, and failed to respond to Bar Counsel's requests for information).

In *Attorney Griev. Comm'n v. Awuah,* the attorney failed to properly maintain, designate, and keep records for his escrow

account; repeatedly commingled client funds with his own in that account; and used funds out of the account for operating expenses and for cash. *Id.* at 426–27, 697 A.2d at 449–50. This Court found that the violations were committed out of ignorance and that there was no misappropriation of funds. *Id.* at 433, 697 A.2d at 453. The attorney was suspended indefinitely with the right to apply for reinstatement after 60 days. *Id.* at 436, 697 A.2d at 454. We imposed a greater sanction in *Attorney Griev. Comm'n v. DiCicco*, 369 Md. 662, 802 A.2d 1014 (2002). We held that "[w]here there is no finding of intentional misappropriation . . . and where the misconduct did not result in financial loss to any of the respondent's clients, an indefinite suspension ordinarily is the appropriate sanction." *DiCicco*, 369 Md. at 687, 802 A.2d at 1028 (citations omitted). In *DiCicco*, the hearing judge concluded that DiCicco violated Rule 1.15(a) by failing to hold the property of his clients or third persons separate from his own, occasionally using his escrow account "as if it also served as his personal bank account." *Id.* at 675–76, 802 A.2d at 1021–22 (footnote omitted). We imposed a sanction of indefinite suspension with the right to seek reinstatement after 90 days and, in support of that sanction, we noted the absence of any fraudulent intent, the lack of evidence that any client suffered financial loss resulting from DiCicco's misconduct, and the lack of evidence of any prior disciplinary problems in DiCicco's 38 years as a member of the Bar. *Id.* at 688, 802 A.2d at 1028.

In *Attorney Griev. Comm'n v. Rose*, 383 Md. 385, 859 A.2d 659 (2004), the attorney failed to designate deposit slips and checks as originating from his attorney trust account and wrote a check which lead to an overdraft of the account. *Id.* at 389–91, 859 A.2d at 661–62. The attorney also failed to respond in any way, or file an answer, to the Attorney Grievance Commission's request for information in the course of its investigation. *Id.* at 389, 859 A.2d at 661. An Order of Default was entered and served on the attorney as a result. *Id.* at 388–89, 859 A.2d at 661. The attorney did not move to vacate the order, was late to the hearing, and offered no evidence. *Id.* at 389, 859 A.2d at 661. The attorney was

indefinitely suspended with a right to reapply after six months. *Id.* at 392, 859 A.2d at 663.

In the instant case, Bar Counsel recommends that the appropriate sanction is an indefinite suspension. Respondent recommends that we impose a reprimand.[10] Our weighing of Respondent's violations and the mitigating circumstances in the instant case leads us to conclude that Respondent's conduct falls within the range of sanctions imposed in the above cited cases. It has been demonstrated, by clear and convincing evidence, that Respondent failed to properly maintain and keep records for his escrow account and commingled his own funds in his attorney trust account. Respondent also failed to fully cooperate with the investigation, although not nearly to the extent of the attorney in *Rose.* We do, however, take into account as a mitigating factor the fact that Respondent's violations were found to be the result of inexperience and lack of knowledge in maintaining trust accounts.

Of course, "an attorney may not avoid responsibility for misuse of his or her trust account, even if such misuse was inadvertent." *Webster, supra,* 348 Md. at 678, 705 A.2d at 1143 (citing *Attorney Griev. Comm'n v. Boehm,* 293 Md. 476, 481, 446 A.2d 52, 54 (1982)). In light of our decisions in *McClain* and *Webster,* we find that the appropriate sanction in the instant case is a suspension for 30 days. *See also Attorney Griev. Comm'n v. Adams,* 349 Md. 86, 98–99, 706 A.2d 1080 (1998) (finding that a 30 day suspension was appropriate for an attorney who, *inter alia,* violated MRPC 1.15 and

---

10. In support of this contention, Respondent argues that the proper sanction here should be no greater than this Court's imposition of a reprimand in *Attorney Griev. Comm'n v. McIntire,* 286 Md. 87, 405 A.2d 273 (1979). The facts of *McIntire* are distinguishable from those of the instant case. The attorney in *McIntire* failed to place funds in proper accounts, keep proper financial records, and to promptly pay funds due to a client. We noted, however, that the case involved "nothing more ... than a genuine fee dispute between lawyer and client." *Id.* at 95, 405 A.2d at 278. In the instant case, we are dealing with Respondent's mishandling of funds and his failure to cooperate with the Commission. In *McIntire,* there was no finding that the attorney in any way failed to cooperate with the Attorney Grievance Commission's investigation. *Id.*

Maryland Rule 16–604, because, even though the attorney's actions were negligent and involved inappropriate handling of client funds, his conduct did not amount to an intentional misuse of the client's funds). The suspension shall commence 30 days from the date of the filing of this opinion.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST UZOMA C. OBI.*