72 A.3d 555

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Anthony Maurice HARMON.

Misc. Docket AG No. 44, Sept. Term, 2010.

Court of Appeals of Maryland.

Aug. 19, 2013.

Dolores O. Ridgell, Assistant Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for Petitioner.

Anthony Maurice Harmon, Largo, MD, for Respondent.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BELL * and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

---

* Bell, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursu-

PER CURIAM.

Petitioner, the Attorney Grievance Commission ("AGC"), acting through Bar Counsel, filed, in accordance with Maryland Rule 16–751,[1] a Petition for Disciplinary or Remedial Action ("the Petition") against Anthony Maurice Harmon ("Respondent") for violations of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC"). Petitioner contends that Respondent commingled funds and failed to properly maintain an attorney trust account and related financial records, in violation of MLRPC 1.15 (Safekeeping Property)[2] and 8.1(b) (Bar Admission and Disciplinary Matters),[3] as well as Maryland Rules 16–606.1 (Attorney Trust Account Record–Keeping),[4] 16–607 (Commingling Funds),[5] and 16–609 (Prohib-

_____

ant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Rule 16–751 provides, in relevant part,

 (a) Commencement of disciplinary or remedial action.
 (1) *Upon approval of Commission.* Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

2. MLRPC 1.15 provides, in relevant part, as follows:

 (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.
 (b) A lawyer may deposit the lawyer's own funds in a client trust account only as permitted by Rule 16–607 b....

3. MLRPC 8.1(b) provides, in relevant part:

 [A] lawyer in connection with a ... disciplinary matter, shall not:
 (b) ... knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

4. Maryland Rule 16–606.1 states, in relevant part:

(a) Creation of records. The following records shall be created and maintained for the receipt and disbursement of funds of clients or of third persons:

. . .

(2) Deposits and disbursements. A record for each account that chronologically shows all deposits and disbursements, as follows: (A) for each deposit, a record made at or near the time of the deposit that shows (i) the date of the deposit, (ii) the amount, (iii) the identity of the client or third person for whom the funds were deposited, and (iv) the purpose of the deposit;

(B) for each disbursement, including a disbursement made by electronic transfer, a record made at or near the time of disbursement that shows (i) the date of the disbursement, (ii) the amount, (iii) the payee, (iv) the identity of the client or third person for whom the disbursement was made (if not the payee), and (v) the purpose of the disbursement;

(C) for each disbursement made by electronic transfer, a written memorandum authorizing the transaction and identifying the attorney responsible for the transaction.

(3) Client matter records. A record for each client matter in which the attorney receives funds in trust, as follows:

(A) for each attorney trust account transaction, a record that shows (i) the date of the deposit or disbursement; (ii) the amount of the deposit or disbursement; (iii) the purpose for which the funds are intended; (iv) for a disbursement, the payee and the check number or other payment identification; and (v) the balance of funds remaining in the account in connection with the matter; and (B) an identification of the person to whom the unused portion of a fee or expense deposit is to be returned whenever it is to be returned to a person other than the client.

(4) Record of funds of the attorney. A record that identifies the funds of the attorney held in each attorney trust account as permitted by Rule 16–607 b. . . .

5. Maryland Rule 16–607 provides:

a. General prohibition. An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16–604 or permitted to be so deposited by section b. of this Rule.

b. Exceptions.

1. An attorney or law firm shall either (A) deposit into an attorney trust account funds to pay any fees, service charges, or minimum balance required by the financial institution to open or maintain the account, including those fees that cannot be charged against interest due to the Maryland Legal Services Corporation Fund pursuant to Rule 16–610b1(D), or (B) enter into an agreement with the financial institution to have any fees or charges deducted from an operating account maintained by the attorney or law firm. The attorney or law firm may deposit into an attorney trust account any funds expected to be advanced on behalf of a client and expected to be reimbursed to the attorney by the client.

ited Transactions).[6, 7]

In accordance with Maryland Rule 16–752(a),[8] we referred the Petition to the Honorable Toni E. Clarke of the Circuit Court for Prince George's County for an evidentiary hearing and to make findings of fact and conclusions of law in accordance with Maryland Rule 16–757.[9]

---

2. An attorney or law firm may deposit into an attorney trust account funds belonging in part to a client and in part presently or potentially to the attorney or law firm. The portion belonging to the attorney or law firm shall be withdrawn promptly when the attorney or law firm becomes entitled to the funds, but any portion disputed by the client shall remain in the account until the dispute is resolved.
3. Funds of a client or beneficial owner may be pooled and commingled in an attorney trust account with the funds held for other clients or beneficial owners.

**6.** Maryland Rule 16–609(b) states as follows:

b. *No cash disbursements.*—An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer, and no cash withdrawal may be made from an automated teller machine or by any other method. All disbursements from an attorney trust account shall be made by check or electronic transfer.

**7.** Petitioner also contended initially that Respondent violated MLRPC 1.1 and 1.3, but withdrew those charges.

**8.** Maryland Rule 16–752(a) provides, in pertinent part, that "[u]pon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record."

**9.** Maryland Rule 16–757, which details the procedure for a judicial hearing held upon the filing of a Petition for Disciplinary or Remedial Action, states, in relevant part:

(b) *Burdens of proof.* The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence.
(c) *Findings and conclusions.* The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the

## I. Procedural History

Respondent was personally served with the Petition on November 22, 2010. He did not file an answer within fifteen days of service, as required by Maryland Rule 16–754.[10] The same day Respondent was served with the Petition, he was served with Petitioner's Requests for Admission of Facts and Genuineness of Documents. Harmon did not respond either to those requests.

Because Harmon did not file an answer, Petitioner filed, on March 1, 2011, a Motion to Extend Time for Judicial Hearing with this Court, see generally Md. Rule 16–757(a) (requiring a hearing to be "completed within 120 days after service on the respondent of the order designating a judge," unless otherwise ordered by the Court of Appeals), so that the Circuit Court could enter an order of default. See Md. Rule 16–754(c) ("If the time for filing an answer has expired and the respondent has failed to file an answer . . . the court shall treat the failure as a default and the provisions of Rule 2–613 shall apply."); Md. Rule 2–613 (permitting a court to enter an order of default if no responsive pleading is filed). We granted Petitioner's motion, thus extending the time for completion of the hearing until April 12, 2011. Petitioner filed a Motion for Order of Default with the Circuit Court on March 4, 2011, which was granted by Judge Clarke on March 9, 2011. The Order of Default and notice that a hearing was scheduled for April 12, 2011 were mailed to the three known addresses of Harmon.

Maryland Rule 2–613(d) provided Respondent with thirty days to move to vacate the Order of Default or otherwise respond to the Notice of Order of Default. Respondent did not take any action during this time. Respondent appeared at

---

conclusion of the hearing. The clerk shall mail a copy of the statement to each party.

10. Maryland Rule 16–754(a) states, in relevant part, that, "[w]ithin 15 days after being served with the petition, unless a different time is ordered, the respondent shall file with the designated clerk an answer to the petition and serve the copy on the petitioner."

the April 12 hearing, however, with an Opposition to the Motion to Default [11] and an Answer to the Petition. Respondent argued that his failure to timely file an Answer was due to family and personal problems, including divorce, foreclosure, and the death of a family member. Finding that Respondent did not satisfactorily substantiate any averment meeting the standard for vacating the Order of Default under Maryland Rule 2–613(d),[12] the Circuit Court denied Respondent's motion. The factual averments made in the Petition were, therefore, deemed admitted, *see* Md. Rule 2–323(e) ("Averments in a pleading to which a responsive pleading is required ... are admitted unless denied in the responsive pleading...."); *Attorney Grievance Comm'n v. Lee,* 390 Md. 517, 524, 890 A.2d 273, 277 (2006), as were the matters contained in the Requests for Admission of Facts and Genuineness of Documents previously served on, but never responded to by, the Respondent. See Md. Rule 2–424(b) ("Each matter of which an admission is requested shall be deemed admitted unless ... the party to whom the request is directed serves a response....").

Following the evidentiary hearing, at which Respondent was permitted to participate, Judge Clarke issued her Findings of Fact and Conclusions of Law, in which she concluded, by clear and convincing evidence, that Respondent violated MLRPC

---

**11.** The hearing judge treated the Opposition to the Motion for Default as a Motion to Vacate the Order of Default under Maryland Rule 2–613(d).

**12.** Maryland Rule 2–613(d) requires a party seeking to vacate an order of default to "state the reasons for the failure to plead and the legal and factual basis for the defense to the claim." In *Attorney Grievance Commission v. Steinberg,* 395 Md. 337, 359–60, 910 A.2d 429, 442 (2006), we determined that a hearing judge did not abuse his discretion in declining to vacate the order of default because the respondent asserted, but did not provide an affidavit or other evidence in support of his claim, that he had not been served properly. Here, Respondent attempted to justify his failure to respond by stating that he was going through some personal difficulties. He does not argue that Judge Clarke's refusal to vacate the order of default was an abuse of discretion. Judge Clarke did not abuse her discretion in denying the motion to vacate the order of default.

1.15 and 8.1(b), and Maryland Rules 16–606.1, 16–607, and 16–609. Harmon filed with this Court, one day before oral argument, an Opposition to the Petitioner's Recommendation for Sanction. Petitioner did not receive a copy of Harmon's Opposition until the day of oral argument, and accordingly asked this Court to strike Harmon's Opposition as untimely.

## II. Hearing Judge's Findings of Fact and Conclusions of Law

Harmon maintained an attorney trust account at Bank of America. On or about June 10, 2009, Harmon authorized the transfer of $500 from his attorney trust account to a personal account of his. At the time the transfer was authorized, however, the attorney trust account did not have sufficient funds. As a result, the attorney trust account was overdrawn in the amount of $101.50.

On or about July 22, 2009, Bar Counsel [13] mailed a letter to Respondent to inform him of the overdraft and request that Respondent provide an explanation for the overdraft and copies of his financial records. Harmon did not respond to Bar Counsel's request.

Bar Counsel mailed a second letter to Harmon on or about August 19, 2009, regarding the overdraft. On or about August 22, 2009, Harmon responded to Bar Counsel's inquiry, stating that the overdraft occurred after he deposited a retainer check from a client and subsequently transferred $500 to his business checking account to pay rent for his office space. He also provided records indicating that, on June 8, he deposited $200 in his attorney trust account. On June 10, however, a $200 charge-back was made to the account.

On or about September 14, 2009, Bar Counsel mailed a third letter to Harmon, asking for further information regarding the transactions leading to the June 10 overdraft. Specifically, Bar Counsel requested a copy of the $300 payment to the

---

**13.** Respondent received correspondence from multiple individuals at the Attorney Grievance Commission. For purposes of simplicity, we will refer to these individuals uniformly as "Bar Counsel."

attorney trust account constituting the difference between the $200 deposited on June 8 and the $500 transferred on June 10. Harmon did not respond. On October 7, Bar Counsel mailed a fourth letter, asking Harmon to respond within seven days. Harmon, again, failed to respond. On or about November 13, 2009, Bar Counsel mailed a fifth letter to Harmon, informing him that the matter was upgraded to a docketed case and requesting a response within fifteen days. Harmon did not respond. Bar Counsel mailed another letter on or about December 17, by both certified and first-class mail. Although the letter sent by certified mail was returned as "unclaimed" to Bar Counsel by the postal service, the letter sent first-class was not.

On January 25, 2010, an investigator for Bar Counsel delivered to Harmon a copy of an investigative subpoena, issued to Bank of America, for production of Harmon's trust account records. At that time, Harmon gave to the investigator a letter for Bar Counsel dated September 22, 2009. Bar Counsel had not previously received the letter. On January 25, Harmon spoke to an Assistant Bar Counsel by telephone. During that conversation, he confirmed that his mailing address was a post office box in Largo (to which Bar Counsel had previously mailed its correspondence), and stated that he generally retrieved his mail from the post office box two or three times a week.

On or about February 1, 2010, Harmon wrote to Bar Counsel and explained that, in addition to the $200 deposited into his attorney trust account on June 8, he had also received and deposited $300, purportedly for legal services already rendered, from another client named Goldsmith. According to the Bank of America records received by Bar Counsel, however, the $300 was received by Harmon from an individual named William Phillips.

Moreover, the Bank of America records showed that Harmon made occasional transfers from personal Bank of America accounts into his attorney trust account. For example, on September 2, 2009, Harmon made two separate transfers into

his attorney trust account, in the amount of $900 and $1,700, from a personal account. He also deposited, on at least two occasions into his attorney trust account, funds received by him as rental payments on property that he owned personally. On at least one occasion, a counter debit on March 25, 2009, Harmon withdrew funds in cash from his attorney trust account. Additionally, the hearing judge noted that Harmon failed to maintain records, made contemporaneously with the disbursements and deposits from and into his attorney trust account, showing "the date of the transaction, the amount, the payee, the identity of the client or third person for whom the disbursement/deposit was made and the purpose of the disbursement/deposit."

The hearing judge found, by clear and convincing evidence, that Harmon's handling of his attorney trust account and subsequent failure to cooperate with Bar Counsel violated MLRPC 1.15 and 8.1(b), as well as Maryland Rules 16–606.1, 16–607, and 16–609. Specifically, Judge Clarke noted that, with respect to MLRPC 1.15 and Rules 16–601.1, 16–607, and 16–609, Harmon failed to maintain accurate and complete records for his attorney trust account, as demonstrated by his incorrect identification of the source of the June 8 deposit of $300, improperly commingled his personal funds with his client funds by transferring funds from personal accounts into his attorney trust account, and improperly made cash withdrawals from his attorney trust account. Moreover, Judge Clarke noted that a reasonable inference of Harmon's repeated failure to respond to Bar Counsel's request to produce the financial records of the transactions at issue was that the records had not been maintained properly and did not, in fact, exist.

In determining that Harmon also violated MLRPC 8.1(b), Judge Clarke inferred that the letters mailed to Harmon by Bar Counsel (and not returned to Bar Counsel by the postal service) requesting information regarding Harmon's attorney trust account were in fact received. (citing *Fidelity & Casualty Co. v. Riley,* 168 Md. 430, 433–34, 178 A. 250, 252 (1935) (noting that a letter correctly stamped, addressed, and mailed

is presumed to have been delivered); *Stiegler v. Eureka Life Ins. Co.*, 146 Md. 629, 647, 127 A. 397, 404 (1925) (same)). Because Harmon received Bar Counsel's requests, failed to acknowledge them, and did not request an extension of time to respond, Judge Clarke determined that Harmon knowingly failed to respond in a timely manner. Moreover, because Bar Counsel's letters referred to MLRPC 8.1, and warned that failure to respond constituted a violation of that Rule, the hearing judge determined that Harmon was aware of his obligation, and the consequences of his failure, to respond.

### III. Analysis

The Court of Appeals has "original and complete jurisdiction over attorney discipline proceedings in Maryland." *Attorney Grievance Comm'n v. Penn*, 431 Md. 320, 333–34, 65 A.3d 125, 133 (2013) (quoting *Attorney Grievance Comm'n v. Rand*, 429 Md. 674, 712, 57 A.3d 976, 998 (2012)). Although we review the record independently, "we generally will accept the hearing judge's findings of fact, unless those findings are clearly erroneous." *Attorney Grievance Comm'n v. Tanko*, 408 Md. 404, 418, 969 A.2d 1010, 1019 (2009). We review the hearing judge's conclusion of law without deference, pursuant to Maryland Rule 16–759(b)(1).[14] *Penn*, 431 Md. at 334, 65 A.3d at 133–34 (citing *Attorney Grievance Comm'n v. Jones*, 428 Md. 457, 467, 52 A.3d 76, 82 (2012) (per curiam)).

Neither party filed exceptions to the hearing judge's Findings of Fact and Conclusions of Law. We therefore accept the facts as set forth by Judge Clarke.[15] Based on our indepen-

---

**14.** Rule 16–759(b)(1) states:
 (b) Review by Court of Appeals.
 (1) Conclusions of law. The Court of Appeals shall review de novo the circuit court judge's conclusions of law.

**15.** As noted previously, Harmon filed an Opposition to Petitioner's Recommendation for Sanction. In that paper, he stated that he took exception to Judge Clarke's Findings of Fact and Conclusions of Law. In his Opposition, Harmon did not argue that Judge Clarke erred in determining the facts, but instead principally contended that mitigating factors should have been included in Judge Clarke's Findings of Fact

dent review of the record and the findings of fact, we conclude that Judge Clarke was correct in concluding that Harmon violated Maryland Rules 16–606.1, 16–607, and 16–609, and MLRPC 1.15 and 8.1(b).

### A. The Attorney Trust Account

We agree with Judge Clarke's conclusion that Harmon violated the following provisions governing attorney trust accounts: Maryland Rules 16–606.1, 16–607, 16–609, and MLRPC 1.15. MLRPC 1.15, entitled "Safekeeping Property," provides, in pertinent part:

> (a) A lawyer shall hold property of clients or a third person that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account . . . and records shall be created and maintained in accordance with the Rules in [Title 16, Chapter 600 of the Maryland Rules]. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of the other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

MLRPC 1.15(a). Maryland Rule 16–606.1, entitled "Attorney Trust Account Record–Keeping," requires attorneys to create and maintain records for all transactions regarding his or her attorney trust account, including "ledgers showing all deposits and disbursements" from the account. Md. Rule 16–606.1; *Attorney Grievance Comm'n v. Van Nelson,* 425 Md. 344, 361, 40 A.3d 1039, 1048 (2012) (citing *Attorney Grievance Comm'n v. Patterson,* 421 Md. 708, 728, 28 A.3d 1196, 1207–08 (2011)).

Judge Clarke found, based on the averments deemed admitted in Petitioner's Requests for Admissions, that Respondent failed to maintain accurate and complete records for his attorney trust account. Moreover, Judge Clarke noted that

and Conclusions of Law. We therefore discuss Harmon's Opposition *infra* in that light only.

Harmon's misidentification of the client from whom he received the $300 check immediately prior to the overdraft (and his failure to produce any records to Bar Counsel) indicates that Harmon's records were inadequate. We agree. Had Harmon properly maintained records in accordance with MLRPC 1.15 and Maryland Rule 16–606.1, he would have been easily able to determine that the correct source of the funds was his client, Philips, rather than his client Goldsmith, as he informed Bar Counsel. Therefore, we conclude that Respondent violated MLRPC 1.15 and Maryland Rule 16–606.1.

MLRPC 1.15 and Maryland Rule 16–607 prohibit attorneys from depositing personal funds in an attorney trust account. *See* MLRPC 1.15(a) (requiring a lawyer to "hold property of clients or third persons . . . separate from the lawyer's own property"); Md. Rule 16–607(a) ("An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16–604 or permitted to be so deposited by section b. of this Rule."); Md. Rule 16–604 (requiring "all funds, including cash, received an accepted by an attorney . . . from a client or third person . . ., unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, [to] be deposited in an attorney trust account in an approved financial institution"). Judge Clarke found that Harmon deposited an earned fee to his attorney trust account on June 8, 2009, deposited personal funds received as rental payments on March 30 and August 14, 2009, and transferred funds from his personal account to his attorney trust account on September 2, 2009. *See, e.g., Attorney Grievance Comm'n v. Moeller,* 427 Md. 66, 46 A.3d 407 (2012) (determining that attorney violated MLRPC 1.15(a) by commingling funds and withdrawing funds for his personal use from his attorney trust account); *Attorney Grievance Comm'n v. Nwadike,* 416 Md. 180, 199–200, 6 A.3d 287, 298 (2010) (determining that attorney violated MLRPC 1.15(a) and Maryland Rule 16–607 by, among other things, failing to "keep her earned fees and reimbursed expenses in her attorney trust account separate from her

clients' and third parties' property"); *Attorney Grievance Comm'n v. Nussbaum,* 401 Md. 612, 638, 934 A.2d 1, 16 (2007) (concluding that attorney's commingling of client funds with personal funds in a trust account violated MLRPC 1.15(a)). We conclude, therefore, that, in addition to his MLRPC 1.15 violation, Harmon also violated Maryland Rule 16–607.

The hearing judge additionally concluded that Respondent violated Maryland Rule 16–609(b), which prohibits cash disbursements. The bank records subpoenaed from Bank of America, and admitted into evidence before Judge Clarke, show a cash withdrawal of $560.00 on March 25, 2009. We therefore agree that Respondent violated Maryland Rule 16–609(b).

## B. MLRPC 8.1(b)

MLRPC provides, in relevant part, that "a lawyer ... in connection with a disciplinary matter, shall not ... (b) ... knowingly fail to respond to a lawful demand for information from ... [a] disciplinary authority...." Judge Clarke concluded that Respondent violated MLRPC 8.1, because Respondent repeatedly failed to respond to communications from Bar Counsel. We agree.

This Court has consistently stated that "repeated failures to respond to Bar Counsel's investigative requests can be violative of Rule 8.1." *Van Nelson,* 425 Md. at 362, 40 A.3d at 1049 (citing *Attorney Grievance Comm'n v. Bleecker,* 414 Md. 147, 174, 994 A.2d 928, 944 (2010); *Attorney Grievance Comm'n v. Kreamer,* 387 Md. 503, 530–31, 876 A.2d 79, 95–96 (2005)). For example, we have noted that an attorney's failure to respond to letters from Bar Counsel requesting a response constitutes a violation of the rule, *see, e.g., Attorney Grievance Comm'n v. Tolar,* 357 Md. 569, 582, 745 A.2d 1045, 1052 (2000); *Attorney Grievance Comm'n v. Milliken,* 348 Md. 486, 500–01, 704 A.2d 1225, 1232 (1998), as does an attorney's failure to provide records requested by Bar Counsel. *See, e.g., Attorney Grievance Comm'n v. Kenney,* 339 Md. 578, 587, 664 A.2d 854, 858 (1995).

Judge Clarke determined, and we agree, that Harmon's repeated failure to respond to Bar Counsel's inquiries constituted a violation of MLRPC 8.1. In Bar Counsel's first letter, dated June 22, 2009, Bar Counsel requested a response from Harmon within ten days after its receipt. Although Harmon did respond to Bar Counsel's letter, he did not do so until August 22, 2009, and therefore failed to respond in a timely manner. He also did not provide all of the requested documentation, including copies of client ledgers, deposit slips, canceled checks, and monthly bank statements, to Bar Counsel.

Harmon failed to respond to letters requesting additional information sent by Bar Counsel on September 14, October 7, and November 13, 2009. None of these letters was returned to Bar Counsel by the postal service, *see, e.g., Fidelity & Casualty Co. v. Riley,* 168 Md. 430, 433–34, 178 A. 250, 252 (1935) (noting that a letter, when correctly stamped, addressed, and mailed, is presumed to have been delivered), nor did Harmon acknowledge receipt or request an extension of time to respond. *See, e.g., Attorney Grievance Comm'n v. Queen,* 407 Md. 556, 565, 967 A.2d 198, 203 (2009) (explaining that an attorney may, consistent with MLRPC 8.1(b), acknowledge receipt of Bar Counsel's request, explain why he or she needs and extension of time to respond, and request an extension for a reasonable period). On December 17, 2009, Bar Counsel mailed another letter to Respondent, by both certified, return receipt requested and first-class mail. Although the letter sent by certified mail was returned, the first-class mail was not. Harmon again did not respond to the letter.

On January 25, 2010, when AGC Investigator William Ramsey hand-delivered to Harmon a copy of an investigative subpoena, Harmon provided Ramsey a letter dated September 22, 2009, addressed to Bar Counsel and in response to Bar Counsel's September 14 letter. Bar Counsel had never received the letter. Harmon mailed another letter to Bar Counsel on or about February 5, 2010, which again did not include any of the financial records requested by Bar Counsel.

Respondent argues that, although he admittedly failed to respond to Bar Counsel's requests for information "perfectly," he made a good faith effort to respond to the letters. Although we acknowledge that Harmon did, at times, make some effort to respond to Bar Counsel's requests, his haphazard and incomplete cooperation, as evidenced by his letters dated August 22, September 22 (although not received by Bar Counsel), and February 5, does not justify his failure to provide the records requested by Bar Counsel or respond to Bar Counsel's other correspondence.[16] We agree with Judge Clarke that Respondent knowingly failed to respond to Bar Counsel's requests for information in a timely manner, in violation of MLRPC 8.1(b).

## IV. Sanction

The disciplinary authority of this Court is "necessary 'to protect the public and its confidence in the legal profession.'" *Attorney Grievance Comm'n v. Jones*, 428 Md. 457, 468, 52 A.3d 76, 82 (2012) (per curiam) (quoting *Attorney Grievance Comm'n v. Goodman*, 426 Md. 115, 131, 43 A.3d 988, 997 (2012)). Disciplinary proceedings were established generally as "a catharsis for the profession and a prophylactic for the public," rather than as punishment for the attorney. *Id.* at 468, 52 A.3d at 82 (quoting *Attorney Grievance Comm'n v. Sheridan*, 357 Md. 1, 27, 741 A.2d 1143, 1157 (1999)). "In determining the appropriate sanction for attorney misconduct, we consider 'the facts and circumstances of each case, including a consideration of any mitigating factors.'" *Attorney Grievance Comm'n v. Kepple*, 432 Md. 214, 230, 68 A.3d 797, 806 (2013) (per curiam) (quoting *Attorney Grievance Comm'n v. Reinhardt*, 391 Md. 209, 223, 892 A.2d 533, 541 (2006)).

Petitioner recommends that Harmon receive an indefinite suspension with the right to apply for reinstatement no sooner than six months. Respondent filed, on the day prior to

---

**16.** Indeed, Bar Counsel warned Respondent in its letters, dated July 22 and November 13, that a failure to be respond constituted a violation of MLRPC 8.1.

oral argument in this case, an Opposition to Petitioner's Recommendation for Sanctions, seeking instead a reprimand and presenting arguments in mitigation of Bar Counsel's recommended sanctions. Specifically, Respondent contended that his misconduct was attributable to clinical depression resulting from difficult occurrences in his personal life, and that he was, as a result, attending counseling sessions. Additionally, he noted that he had, since being charged, hired an accountant to assist in bringing his law practice into compliance with the MLRPC and Maryland Rules. He attached letters from his accountant and therapist to that effect. Although we recognize that, during the time Bar Counsel conducted its investigation, Harmon may have been confronting substantial personal difficulties, his Opposition was not only untimely, *see* Md. Rule 16–758,[17] but it also did not include a Certificate of Service, *see generally* Md. Rule 1–323 (requiring a pleading or other paper requiring service to be "accompanied by . . . a signed certificate showing the date and manner of making service"), was not delivered to opposing counsel until the morning of oral argument before this Court, and relied on evidence in mitigation that was not introduced before, and was not considered by, the hearing judge. Because Respondent failed to adequately establish on the record below, and Judge Clarke made no findings regarding, the "evidence" presented in mitigation at oral argument, we shall not consider it when raised for the first time before this Court.

■ "The public is protected when sanctions are imposed that are commensurate with the nature and gravity of the

---

**17.** Maryland Rule 16–758 provides, in relevant part:

(b) Exceptions; Recommendations. Within 15 days after service of the notice required by section (a) of this Rule, each party may file (1) exceptions to the findings and conclusions of the hearing judge and (2) recommendations concerning the appropriate disposition under Rule 16–759(c).

(c) Response. Within 15 days after service of exceptions or recommendations, the adverse party may file a response.

Petitioner's Recommendation for Sanction was filed with this Court, and mailed to Respondent, on July 8, 2011. Respondent's opposition was not filed, however, until November 7, 2011, and was therefore untimely.

violations and the intent with which they were committed." *Attorney Grievance Comm'n v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997) (citing *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 483, 671 A.2d 463, 480 (1996); *Attorney Grievance Comm'n v. Myers,* 333 Md. 440, 447, 635 A.2d 1315, 1318 (1994)). We have repeatedly imposed an indefinite suspension on attorneys who violate MLRPC 8.1(b) in addition to other ethical rules. *See, e.g., Attorney Grievance Comm'n v. Alston,* 428 Md. 650, 53 A.3d 1142 (2012) (indefinite suspension ordered for attorney who violated MLRPC 1.3, 1.4, 1.15, 1.16, 8.1, and 8.4); *Attorney Grievance Comm'n v. Khandpur,* 421 Md. 1, 25 A.3d 165 (2011) (indefinite suspension with right to reapply in sixty days for violation of MLRPC 8.1(b), among other violations); *Attorney Grievance Comm'n v. Brown,* 353 Md. 271, 725 A.2d 1069 (1999) (indefinite suspension with right to reapply in one year for violations of MLRPC 1.4, 8.1, and 8.4); *Attorney Grievance Comm'n v. Alison,* 349 Md. 623, 709 A.2d 1212 (1998) (indefinite suspension with right to reapply in two years for numerous MLRPC violations in addition to 8.1 violation).

Bar Counsel contends that Respondent should be permitted to apply for reinstatement after no less than six months. In support, Bar Counsel relies in part on *Attorney Grievance Comm'n v. Rose,* 383 Md. 385, 859 A.2d 659 (2004). In *Rose,* we considered the appropriate sanction for an attorney who failed to designate deposit slips and checks appropriately, wrote a check leading to an overdraft of his account, failed to respond to the AGC's requests for information, and did not respond or participate before the hearing judge in violation of MLRPC 1.15, 8.1(b), and 8.4(d). *Id.* at 391–92, 859 A.2d at 662–63. There, as here, was no mitigation evidence in the record. *Id.* at 392, 859 A.2d at 663. We suspended Rose indefinitely, with the right to apply for reinstatement in six months. *Id.*

Similarly, in *Attorney Grievance Comm'n v. Obi,* 393 Md. 643, 904 A.2d 422 (2006), we considered the appropriate sanction for an attorney who commingled funds, made checks payable to cash, used the attorney trust account for personal

purposes, and failed to respond to demands from the AGC in violation of MLRPC 1.15 and 8.1(b) and Maryland Rule 16–609. We noted that Obi's errors regarding his attorney trust account were attributable to inexperience, and that although Obi had failed to respond to a lawful demand from Bar Counsel in violation of Rule 8.1(b), his failure to cooperate was not as egregious as that of the attorney in *Rose*. *Id.* at 660, 904 A.2d at 432. We therefore ordered a thirty-day suspension. *Id.* Unlike the present case, however, Obi cooperated substantially with the AGC, did not default in the proceedings before the hearing judge, and presented mitigation evidence on his own behalf before the hearing judge.

We determine that, because Judge Clarke did not make any findings regarding mitigating factors, and Respondent repeatedly failed to respond to Bar Counsel's requests, this case is more analogous to *Rose* than *Obi*. We therefore conclude that an indefinite suspension, with the right to apply for reinstatement in no sooner than six months after the effective date of the suspension, is the appropriate sanction.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST ANTHONY MAURICE HARMON.**